

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00159-CV

FARMERS GROUP INSURANCE, INC., D/B/A FARMERS GROUP INSURANCE, FARMERS INSURANCE EXCHANGE, AND FIRE INSURANCE EXCHANGE

APPELLANTS

V.

TAMMY POTEET

APPELLEE

----------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

----------

## OPINION

----------

This is the second appeal in a case involving a claim under a homeowner's policy issued by Appellant Farmers Insurance Exchange, a Farmers Insurance Group entity (Farmers), to Appellee Tammy Poteet for damages allegedly caused by a November 2002 discharge of black smoke and soot from the central heating and air-conditioning system of a home she had recently purchased from

Roger and Sandy Kaiser. In the first appeal, we affirmed a combined no-evidence and traditional summary judgment in favor of Farmers that Poteet take nothing on her claims against Farmers for breach of contract, insurance code violations, deceptive trade practices, negligent misrepresentation, and breach of the duty of good faith and fair dealing. *Poteet v. Kaiser*, No. 02-06-00397-CV, 2007 WL 4371359 (Tex. App.—Fort Worth Dec. 13, 2007, pet. denied) (mem. op.).[1]

We further held, however, that the evidence raised a fact issue regarding whether Farmers had breached the appraisal provision of the policy. *Id.* at \*7. We reversed the trial court's summary judgment as to Poteet's claim for breach of the appraisal provision and remanded the case to the trial court for further proceedings on that claim. *Id*. at \*14. We affirmed the take-nothing judgment as to Poteet's claims against the Kaisers and as to all other claims against Farmers*. Id.* at \*14. On remand, Poteet proceeded to trial in January 2011 on her original petition as to the claim for breach of the appraisal provision of the policy. Farmers appeals from the judgment rendered on a jury's verdict in favor of Poteet for damages and attorney's fees on her cause of action for breach of the appraisal provision.

---

[1]We also affirmed the no-evidence summary judgment in favor of the Kaisers, holding that Poteet failed to produce evidence that the source of the soot was a faulty furnace system, and thus, there was no evidence that false misrepresentations, fraud, deceptive acts, or negligent misrepresentations by the Kaisers caused Poteet's damages. *Id.* at \*5. Poteet has not further pursued her claims against the Kaisers.

2

## I. Issues Presented

Farmers presents three issues with subparts, contending that the trial court erred by: (1) failing to limit the scope of the remanded case to its alleged breach of the appraisal provision and the alleged damages arising from such a breach as mandated by this court's opinion remanding that claim for trial; (2) rendering judgment in favor of Poteet for $31,300.00 in damages, consisting of $11,300.00 for actual cash value of personal property and $20,000.00 for loss of fair market value of the residence, as well as $200,000.00 for attorney's fees; and (3) failing to render judgment notwithstanding the verdict for damages and attorney's fees limited to Farmers's alleged breach of the appraisal provision. We affirm in part, reverse and render judgment in favor of Farmers in part, and remand the issue of attorney's fees.

## II. Background Facts

### *Investigation and Remediation by Farmers*

After a November 2002 discharge of smoke and soot from her heating and air-conditioning system, Poteet reported her claim to Farmers, which investigated and initially determined that the discharge of smoke and soot was caused by cracked heat exchangers in the home's heating system and that the loss was covered (except for the heat exchangers, which were replaced under her home warranty) under Poteet's homeowners' policy as "sudden and accidental damage from smoke." Farmers paid for remediation and repair, including temporarily relocating Poteet and her daughter to a hotel during the process, cleaning and

3

replacing furniture and carpet, repainting of the ceiling, and cleaning the home's walls and contents. *Id.* at *1.

Poteet was dissatisfied with the remediation and cleaning efforts and claimed that continued presence of soot in the air of the home was causing her and her daughter to experience respiratory problems and rendered the home uninhabitable*. Id.* Poteet hired a Certified Industrial Hygienist, Robert Miller, to investigate whether soot was still present in the home. As we related in our prior opinion, Miller stated in a letter to Poteet's counsel that, in his opinion, living in the house would be unsafe because of the levels of soot that remained in the air. *Id.* Miller later inspected the house for the continued existence of soot and conducted tests that determined soot was present. *Id.* at *4. Miller found evidence of multiple sources of soot, but he did no tests to determine the sources of the soot. *Id.*

### *Appraisal Provision Invoked by Farmers*

The parties disagreed as to any additional amounts for further remediation or additional living expenses owed by Farmers under its policy. Farmers invoked the appraisal provision in the policy on February 26, 2003. The appraisal provision in the policy issued to Poteet by Farmers provided in relevant part as follows:

> 7. **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers

4

will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. . . .

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

Poteet designated Miller as her appraiser; Farmers likewise designated an appraiser, but Farmers's designee apparently never spoke to Miller. Because of lack of communication from Farmers's appraiser, Farmers's counsel and Poteet's counsel each proposed an umpire. They ultimately agreed on a choice for an umpire, who refused to serve. As provided by the appraisal provision, Farmers filed suit in Taylor County district court on May 9, 2003, to obtain appointment of an umpire by the court. Poteet answered in that suit, but neither she nor Farmers ever requested appointment of an umpire by the court. The Taylor County suit filed by Farmers to obtain appointment of an umpire for an appraisal languished; it was ultimately dismissed for want of prosecution in January of 2005. *Id.*

### *Poteet Sues Farmers*

While the appraisal suit was pending in Taylor County, Poteet filed this suit in Denton County in May 2004, contending Farmers had breached the policy and committed insurance code violations and other extra-contractual violations by

5

failing to pay for additional covered losses under her policy for remediation to the home and contents, loss of fair market value and maintenance for the home, and additional living expenses. *Id.* at *2.

After discovery and shortly before trial, Farmers filed a combined no-evidence and traditional motion for summary judgment on all causes of action asserted by Poteet for additional amounts that she claimed Farmers owed under its policy. By its no-evidence motion, Farmers asserted lack of evidence of causation of the alleged additional damages to Poteet from a covered event. Specifically, Farmers asserted that, under the doctrine of concurrent causation, Poteet had the burden and produced no evidence of coverage of the additional damages she sought by failing to segregate which part of her loss resulted solely from a covered event and which part resulted from non-covered sources. *Id.* at *5–6.

In her response, Poteet attached portions of the deposition of Miller as her expert witness, in which he stated that there were multiple sources of the soot but did not purport to determine what part of the soot resulted from the sudden and accidental discharge from the damaged heat exchange units and what part resulted from other non-covered causes. *Id.* at *6. Miller based his opinion only on the "history" related by Poteet and his finding of soot in the house and provided no scientific test results confirming the sources of the soot. *Id.*

6

***Summary Judgment Affirmed Except as to Appraisal Provision***

In affirming the summary judgment granted by the trial court in favor of Farmers, we held that because there was evidence that the cause of the soot was a combination of covered and non-covered perils, Poteet had the burden under the doctrine of "concurrent causation" to segregate those damages solely caused by the covered peril. Because she failed to do so, we held, there was no evidence that the additional damages she sought by her suit were covered, and consequently, there was no evidence that Farmers breached the policy by failing to pay her any additional amounts on her claim beyond what it had previously paid.[2] *Id.* at *7.

In Poteet's appeal from the summary judgment in favor of Farmers to this court, we upheld the summary judgment in favor of Farmers as to all causes of action asserted by Poteet with the single exception that we held that there was some evidence that raised a fact issue as to whether, by not following through with the appraisal process, Farmers Group breached the appraisal provision of the policy, "resulting in damages to [Poteet] including costs and fees associated with the appraisal case," and we remanded for trial on that claim. *Id.* at *7.

---

[2]We also upheld the traditional and no-evidence summary judgment in favor of Farmers as to Poteet's causes of action for breach of good faith and fair dealing and for misrepresentations and unconscionable actions as violations of the deceptive trade practices act and insurance code. *Id.* at *9–12.

7

### *Jury Trial on Remand*

On remand, the case was tried to a jury in January 2011. The evidence was largely undisputed. The hotly contested issue with which the parties and the trial judge struggled throughout the proceedings was the scope of damages, if any, that resulted from Farmers's breach of the appraisal provision, in light of our 2007 opinion stating that there was at least some evidence that, by failing to follow through with the appraisal process, Farmers breached the appraisal provision, "resulting in damages to [Poteet] including costs and fees associated with the appraisal issue," and in light of a decision handed down after our 2007 opinion by the Supreme Court of Texas in *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009), which addressed for the first time the scope of appraisal provisions in property insurance policies in Texas.

Farmers's position on remand was that Poteet's potential damages resulting from a breach of the appraisal provision must be limited to "costs and fees associated with the appraisal process," because by our affirmance of the previous summary judgment in favor of Farmers on all other claims, we had already held that Poteet failed to prove any covered loss other than what Farmers had already paid, which was "law of the case" and precluded Poteet from recovering any additional damages that might have been awarded by the appraisal process had it proceeded to completion.

Poteet suggested in response, first, that because the trial court retained plenary power after our remand, it could simply set aside its no-evidence

8

summary judgment in favor of Farmers that this court had previously affirmed and retry her case for recovery of additional covered damages through her theory that she would have been awarded all the damages she sought by an appraisal award. Poteet principally argued, however, that her recoverable damages should, in any event and despite our previous decision, include the *full amount* of her claimed loss, whether covered or not, which she contended she would have been awarded in the appraisal process but for Farmers's failure to follow through with the appraisal process, including rental cost for substitute housing and maintenance of the home until it was sold and loss of fair market value of the home. Stated differently, Poteet contended that, if Farmers had followed through with the appraisal process, the appraisal "would have resulted in [Poteet] being compensated for [her] loss." And most significantly, "the parties would have been bound by such determination and [the] subsequent litigation [that she filed against Farmers and that resulted in the summary judgment against her on any additional covered damages] would have been avoided."

The trial court firmly rejected Poteet's argument that it could set aside the previous summary judgment we had affirmed but also denied Farmers's Motion for Partial Summary Judgment. Farmers repeatedly objected throughout the trial to evidence of additional losses sought by Poteet that she contended Farmers failed to pay after this court had already held in our previous opinion that there was no evidence of causation of such damages by a covered peril and that were

9

not within the scope of the damages that Poteet was entitled to recover as caused by breach of the appraisal provision.

However, referring to the *Johnson* case, which we address below, the trial court was troubled by the language in the appraisal provision that an award under that provision would be "binding" on both parties. As the trial court stated to Farmers's counsel:

> I understand your argument, which is the Court of Appeals determined causation. My problem with it is, . . . the clause is different than in the *Johnson* case. Because the clause . . . [in this case in] the very last line, "the appraisal process says it was binding on the parties."
>
> . . . .
>
> Your point is, well, if the appraisers had found it, then the Appellate Court said but there was no cause. But my problem with that is the appraisal is binding.

The trial judge further explained his difficulty in accepting Farmers's argument that a court could determine no causation of damages if there were a "binding" appraisal:

> Well, the appraisal in this case, it wasn't just value, it was loss. So you are telling me if you go through the appraisal process and it's binding on the parties and the appraisers come back and say there is $100,000 in damage items here, Farmers would then have the right to go - even with the clause that says that's binding - then to come into court and say we don't have to pay that?

Following additional arguments from both parties, the judge stated:

> I hear that - I hear that argument. But the problem I have with it is, even the Fort Worth Court of Appeals said there is a fact issue as to whether the insurance company breached [the appraisal provision].

10

If they breached, they can't get away with it. They need to be penalized.

So then the question becomes, okay, to what degree. That's what we're fighting about, is what degree . . . In this [appraisal] clause, there is - it's binding, there is the sentence at the very end that says the determination is binding . . . And that's the issue here. If [Poteet] prove[s] [her] case and prove[s] that in the appraisal process these would have been deemed to be covered, would that have bound the insurance company to have paid. . . . .[3]

Throughout the trial, Farmers repeatedly objected to Poteet's argument and evidence offered by her in an effort to establish that the full amount of additional damages she claimed under her homeowner's policy shown by an estimate or "appraisal" obtained by her expert, Miller, would have been awarded as a covered loss in the appraisal process, and since Farmers's appraiser never submitted an appraisal, her appraisal was uncontroverted and should determine the amount of an award. Farmers's counsel argued that the argument was irrelevant and prejudicial, stating: "[T]his is not a covered loss. And the damages should arise only out of the . . . defendant's failure, if any, to pursue the appraisal." The judge granted Farmers a continuing objection but allowed Poteet to present evidence to the jury concerning all soot damage to her home and its

---

[3]The court then stated: I've ruled. I'm going to let it go so far - and I haven't heard any evidence. But from what I'm aware of the case, I'm letting all these issues go to the jury. . . . I told you what you can do. You can make the argument that it was not a covered loss because they didn't - there is no proof of causation. But I'm not going to let you reference the Court of Appeals' opinion. Because, in my view, that's the point, the appraisal process is independent of the judicial process. . . . [T]hat's where I disagree, if you will. That's my bone of contention with the defense's side.

contents and maintenance costs for the house for three years until she sold it, as well as loss of fair market value to her home.[4]

### The Evidence

As in the prior summary judgment proceedings, Poteet brought forward no evidence of causation that the damages resulted solely from soot originating from the damaged heat exchangers and, therefore, failed to segregate covered from non-covered damages resulting from other sources of soot in the house. Poteet's expert, Miller, testified live as to his testing and his opinion that soot existed in Poteet's home and rendered it unsafe for habitation, but he offered no opinion as to the source or causation of any of her alleged damages from soot. Poteet's first attorney, Denise Martinez, testified she hired Miller within a few days of being engaged to represent Poteet. Before even seeing Poteet's home or conducting any testing, Miller wrote his report to Poteet's attorney, providing his opinion that he believed that the house was "contaminated" and that, based on potential health impact, it was unsafe for habitation. Subsequently, he inspected and conducted tests for soot but did not identify the sources or distinguish between them, and he could not tell the jury that he had eliminated all

---

[4]The trial court sustained Farmers's objection to any testimony of any effects of the soot in the house on the health of Poteet or her daughter because of lack of any expert medical evidence that her complaints or those of her daughter of headaches and other respiratory symptoms were in any way related to conditions in her home.

sources but the furnaces. Miller testified it was not his job to determine what damages were covered and not covered.

Miller, who Poteet appointed as her appraiser and the "head of her appraisal team," selected a project manager in restoration services who provided the estimate or "appraisal" of the cost of cleaning and repair of all contents of the house, including packing, storing, and hand cleaning all contents, painting interior ceilings, and cleaning walls, but Miller testified that all contents on the list needed to be replaced at an estimated cost of $47,000.00 because of contamination. Robert Steele, the project manager, did not purport to testify to the source of the contamination and testified that Miller did not give him details regarding the contamination other than it was a "soot clean-up job."

In his closing argument to the jury, Poteet's counsel argued that all of Poteet's damages whether covered or not, including the property damage and replacement of her home's contents, her living expenses, maintenance of the home, and loss of value of the home upon its sale, were caused by Farmers's breach of the appraisal provision. He summed up Poteet's position:

> And, again, everything flowed from that, your presence here; all of the courtroom stuff for the judge; all of the things we have had to do; all of the documents we have had to look at; all of the experts we have had to listen to; everything that we have had to do to cross-examine . . . everything is a result of the failure, one failure, one failure alone, and that is they did not appoint an appraiser.

13

### *The Verdict and Judgment*

The trial court submitted five questions to the jury, all of which referenced the "appraisal provision" in one way or another. In answer to Question 1, the jury found that Farmers "failed to materially comply with the appraisal provision," and in answer to Question 2, that Poteet did not.[5] In answer to Question 4, which inquired separately as to the elements of Poteet's "damages, if any, that resulted from such failure to comply with the appraisal provision," the jury found:

| | |
|---|---|
| $11,300.00 | "The actual present cash value for each item of personal property that was at issue during the appraisal process" |
| $20,000.00 | "The loss in fair market value of the residence, if any, that was a natural, probable, and foreseeable consequence of [Farmers's] failure to comply with the appraisal provision, if you have found any such failure to comply. . . ." |
| $0.00 | "The reasonable and necessary cost of alternative living quarters for Mrs. Poteet, if any, that was a natural, probable, and foreseeable consequence of [Farmers's] failure to comply with the appraisal provision, if you have found any such failure to comply;" |
| $6,500.00 | "The reasonable and necessary attorney fees, if any, incurred by Mrs. Poteet that were a natural, probable, and foreseeable consequence of [Farmers's] failure to comply with the appraisal provision" |
| $0.00 | "Mrs. Poteet's reasonable and necessary costs for maintenance of the home, if any, resulting from [Farmers's] failure to comply with the appraisal provision, if you have found any such failure to comply" |

---

[5]Question 3, inquiring as to which party breached first, was conditioned on a "yes" answer to Question 2 and was not answered by the jury.

14

$1,500.00 "The reasonable and necessary litigation expenses, if any, including expert witness fees, that were a natural, probable, and foreseeable consequence of [Farmers's] failure to comply with the appraisal provision, if you have found any such failure."

In answer to Question 5, inquiring as to a "reasonable fee for the necessary services of Mrs. Poteet's attorney in this case," the jury found that $165,000.00 was a reasonable fee "[f]or preparation and trial in this lawsuit only, regarding the sole issue of the appraisal provision of the insurance policy," $10,000.00 for an appeal to the court of appeals, and $25,000.00 for an appeal to the supreme court, totaling $200,000.00. The trial court rendered judgment awarding Poteet all of the damages and attorney's fees found by the jury.

## III. Analysis

### Failure to limit scope of damages on remand

By its first issue, Farmers complains that the trial court erred in failing to limit the scope of the remanded case to damages resulting from its breach of the appraisal provision of the policy in accordance with our opinion and mandate on the prior appeal. Farmers does not challenge the jury's findings in answer to Questions 1 and 2 that it failed to materially comply with the appraisal provision and that Poteet did not.

The jury was asked by Question 4 to provide separate answers for amounts that would fairly and reasonably compensate Poteet for her damages

that resulted from Farmers's breach of the appraisal provision.[6] Farmers does not challenge the jury's findings in answer to that portion of Question 4 that its failure to comply with the appraisal provision resulted in attorney's fees and litigation expenses, including expert witness fees, totaling $8,000.00, as damages resulting from its breach. Instead, Farmers contends that Poteet's damages should have been limited to those amounts.

Farmers complains of the trial court's error in rendering judgment for the additional amounts found by the jury of $11,300.00 for personal property that was "at issue" during the appraisal process and $20,000.00 for loss of fair market value of the residence. Farmers contends that the additional awards totaling $31,300.00 are not recoverable as a matter of law because those findings are for potentially covered damages that we previously held were not recoverable as a matter of law under the policy because Poteet had produced no evidence of causation by a covered peril to support *any* damages for losses above and beyond what Farmers had previously paid.

The jury's finding of $11,300.00 can only be based on some of the figures from the estimate or "appraisal" that Poteet's expert Miller obtained and that Poteet's attorney, Denise Martinez, sent to the umpire who was, for a time, agreed upon by Poteet and Farmers. But that appraisal did not purport to be

---

[6]The elements of damages were submitted separately by agreement of the parties and trial court to avoid yet another remand for retrial in the event of a reversal on one or more elements.

16

based upon damage solely caused by the soot from the "sudden and accidental" occurrence of November 7, 2002, and covered under her policy. At best, the jury's finding awards Poteet for unsegregated losses we assume Poteet would have submitted to the appraisal process. Moreover, there is no evidence that the personal property damages themselves resulted from Farmers's failure to complete the appraisal process. We cannot conceive how an insurer's failure to complete the appraisal process could produce property damage. Likewise, the $20,000.00 award for the loss in fair market value of Poteet's home purports to compensate Poteet for unsegregated loss but is supported by no evidence that the loss was solely caused by soot damage. Both findings suffer from the infirmity that Poteet was attempting to use the breach of the appraisal provision claim as a backdoor to get recovery for losses that we held were not recoverable under the policy in our prior opinion because she failed to produce proof that they were solely caused by the soot from the heat exchanges.

### Concurrent Loss Doctrine

In effect, Poteet obtained findings for damages of $31,300.00 supported by precisely the same absence of proof of causation solely by a covered peril as in her first appeal, despite this court's prior ruling that she could recover damages only for a loss that was covered under the policy, and in neither instance did she carry her burden of segregating any of those damages caused solely by a covered peril from those resulting from other causes, thereby precluding her

17

recovery of any covered damages under the doctrine of concurrent causation. *Poteet*, 2007 WL 4371359, at *6.

Under the doctrine of concurrent causation, when covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril. *See, e.g.*, *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971); *Fire Ins. Exch. v. Kennedy*, No. 02-11-00437-CV, 2013 WL 441088, *3 (Tex. App.—Fort Worth Jan. 31, 2013, pet. denied) (mem. op.); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302–03 (Tex. App.—San Antonio 1999, pet. denied). The burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. *McKillip*, 469 S.W.2d at 163; *All Saints Catholic Church v. United Nat'l Ins. Co.*, 257 S.W.3d 800, 802 (Tex. App.—Dallas 2008, no pet.).

### *Unsegregated Damages Were Not Contemplated for Breach*

In our prior opinion holding that there was "some evidence that [Farmers] breached the appraisal provision," causing damages to Poteet, "including costs and fees associated with the appraisal case," this court found instructive the decision of *Standard Fire Insurance Co. v. Fraiman*, 588 S.W.2d 681 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.), in which the Houston Fourteenth Court of Appeals held that an insured was entitled to maintain a cause of action against the insurer for damages based on the insurer's breach of the appraisal provision in a fire policy. *Fraiman* is the only case of which we are

18

aware in which damages have been awarded for breach of an appraisal provision in an insurance policy.

*Fraiman* arose out of a dispute between the insured and his insurer over the amount of damages to an apartment building caused by fire. *Id.* at 682–83. The insurer never denied coverage or repudiated the policy but disputed the amount claimed by the insured for the fire loss. *Id.* at 683. When the insured invoked the appraisal provision in the policy, the insurer refused to submit to the appraisal process. *Id.* The insured initially brought a declaratory judgment action against the insurer to determine the rights of the parties under the appraisal provision. *Id.* The trial court granted the insured a declaratory judgment that the insured was entitled to enforce the appraisal provision against the insurer, and the court of appeals affirmed. *Standard Fire Ins. Co. v. Fraiman*, 514 S.W.2d 343, 347 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ). Thereafter, an appraiser was appointed, an award was made, and the insurer paid the appraised amount of the loss. *Fraiman*, 588 S.W.2d at 683.

The insured then sued the insurer for damages resulting from the insurer's breach of the appraisal provision by refusing to submit the amount of loss caused by fire to the apartment complex to the appraisal process. *Id.* A jury awarded Fraiman consequential damages, including lost apartment rentals and "telephone and travel expenses." *Id.* On appeal, as pertinent here, the insurer contended that the telephone and travel expenses as "consequential damages" were not recoverable under a standard fire insurance policy and that the only amounts

19

contemplated by the parties were those covered fire losses that the insurer had contracted to pay as set out in the policy. *Id.* The court of appeals disagreed. *Id.* at 684. Noting that the insurer had not repudiated its obligation to pay under the policy, the court characterized the suit as based upon a "procedural provision" of the policy, not upon the terms of the policy itself and that "a party clearly breaching an appraisal clause of an insurance policy should be liable in damages caused by such breach." *Id.* The court further stated that the insurer "should not be able to enjoy the use of the [insured's] money because of its own wrongful breach of the policy." *Id.* at 685.

As in *Fraiman,* Farmers did not repudiate its obligation to pay covered losses but acknowledged coverage under the policy for loss to Poteet caused by "sudden and accidental damage from smoke" and disputed the amount owed under the policy. But unlike in *Fraiman*, Farmers invoked the appraisal provision, not the insured, and even filed suit to have an umpire appointed when the parties could not agree. Also, unlike in *Fraiman*, Farmers had already paid significant amounts for remediation and repair, including cleaning and replacing the carpet at least twice, painting the ceilings, hand cleaning the walls, and cleaning and replacing furniture, knickknacks, stuffed animals, and other contents. And unlike in *Fraiman*, Poteet brought suit in this case while the appraisal suit was pending, seeking *additional covered losses under the policy* because she contended Farmers did not properly repair the home and failed to fully pay the claim. And finally, unlike in *Fraiman*, Farmers obtained a summary judgment against Poteet

20

that she was *not* entitled to recover any additional amounts she claimed as covered damages, which we affirmed, before she proceeded with her claim for damages for breach of the appraisal provision.

The only similarity to *Fraiman* is that the issue here is the damages for breach of the appraisal provision, which the court in *Fraiman* characterized as a "procedural provision," not breach of the policy itself. *Id.* at 683. Farmers does not challenge the jury's award of consequential damages of litigation costs and attorney's fees that resulted from Farmers's breach of the appraisal provision, which we specifically listed in our prior opinion as potentially recoverable damages for such a procedural breach. However, the additional damages found by the jury of $31,300.00 are outside the scope of the remanded case because those amounts are for recovery of covered damages.

We agree with Farmers that the damages found by the jury of $31,300.00 are beyond the scope of the remanded case as an "end run" around this court's prior ruling that Poteet had already failed to prove any covered damages beyond the amounts that Farmers had already paid. And, we must note that this unusual conundrum created by allowing a suit for covered damages against an insurer to proceed to judgment before the parties pursue and obtain an appraisal of a loss under a policy appraisal procedure is not only rare but will be unlikely to happen again. At the time Farmers invoked the appraisal provision in its policy, as well as at the time Poteet subsequently filed her suit for damages against Farmers, neither party had the benefit of the *Johnson* case or the guidance of still a more

21

recent supreme court decision in *In re Universal Underwriters of Texas Insurance Co.*, 345 S.W.3d 404 (Tex. 2011).

The insured was the party who demanded appraisal in both *Fraiman* and *Johnson* and who successfully compelled the insurer to participate in the appraisal process. *Johnson*, 290 S.W.3d at 887–88, 895; *Fraiman*, 588 S.W.2d at 683. It was the insurer who sought to compel an appraisal in *Universal Underwriters*, 345 S.W.3d at 406. The insured, Grubbs Infiniti, was unsatisfied with Universal's initial inspections and two payments on its claim for hail damage to buildings on its property and filed suit against Universal for underpayment of its claim, alleging breach of contract and claims for extra-contractual damages. *Id.* In response, Universal invoked the policy's appraisal clause, virtually identical to the clause in this case, which provided, in pertinent part:

> [i]f YOU or WE can't agree on the value of the property or the amount of YOUR property LOSS, either of us can demand in writing, an appraisal within 20 days of such demand. Then, each will select a competent and disinterested appraiser who will, in turn, select a competent and disinterested umpire. . . .
>
> The appraisal shall be then made at a reasonable time and place. Each appraiser will state his appraisal of the value or LOSS. If they can't agree, they will submit their differences to the umpire. The value of the property or amount of the LOSS will be determined by a written agreement of any two of them. Such an agreement is binding.

*Id.* Universal moved to compel an appraisal and to abate all other proceedings in the interim, and Grubbs responded that Universal had waived its right to appraisal by not invoking it sooner. *Id.* After both the trial court denied the

22

motion and the court of appeals denied mandamus relief, the supreme court conditionally granted relief, quoting from *Johnson* that appraisal clauses in homeowners, automobile, and property policies in Texas "provide a means to resolve disputes about the amount of loss for a covered claim and such clauses are generally enforceable, absent illegality or waiver." *Id*. at 407 (citing *Johnson,* 290 S.W.3d at 888). "Appraisals can provide a less expensive, more efficient alternative to litigation, and we recently held that they 'should generally go forward without preemptive intervention by the courts.'" *Id.* (citing *Johnson*, 290 S.W.3d at 895). Holding that Universal did not unreasonably delay invoking the appraisal procedure from the point of "impasse" resulting in any prejudice to Grubbs, such that Universal was entitled to mandamus relief to enforce the appraisal clause, the supreme court made the following statement pertinent to this case:

> Moreover, it is difficult to see how prejudice could ever be shown *when the policy, like the one here, gives both sides the same opportunity to demand appraisal.* If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts.

*Id.* at 412 (emphasis added).

In this case, neither party alleged impasse, delay in invoking appraisal, or prejudice, and as noted above, the parties did not have the benefit of *Universal* ten years ago when Farmers invoked the appraisal clause or when Poteet filed suit. However, we cannot help but note how much time and how many hundreds

23

of hours of lawyer time and court time could have been saved had both parties pursued the less expensive and more efficient procedure available by virtue of the appraisal provision here before Poteet resorted to filing her damage suit in Denton County. As to why Poteet did not seek to compel that appraisal proceeding in the Taylor County suit, her first and former lawyer (who became a fact witness in the litigation) acknowledged on cross-examination that the Taylor County appraisal suit was still pending but was not being pursued when the Denton County suit was filed in May 2004. The appraisal suit was not dismissed until January 2005. Poteet's first lawyer stated that she did what was necessary to do when the appraisal suit was filed—she filed an answer. She then turned it over to Mr. Dwyre, and the case was dismissed after the new (Denton County) suit was filed. No hearings were set, and there were no rulings by the court while the Taylor County suit was pending. The attorney acknowledged that either party could have sought relief in the court to appoint an umpire. She was still trying to work with Farmers's attorney to use Billy Boone as an umpire. And when Boone said he could not do it, she did nothing to seek the court's assistance to make sure an umpire was appointed. In her opinion, Farmers breached the appraisal provision on July 1, 2003, but she sought no relief as Poteet's attorney of record in the Taylor County appraisal suit from that time until January 2005, when it was dismissed. In light of *Universal*, it appears that Poteet could equally have compelled Farmers to proceed with the appraisal suit in Taylor County and required appointment of an umpire to conduct the appraisal.

24

### *Law of the Case*

The law of the case doctrine is "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). Under the doctrine, a question of law previously decided on appeal governs a case throughout its subsequent stages. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 71 (Tex. App.—San Antonio 2011, no pet.); *Jones & Gonzalez, P.C. v. Trinh*, 340 S.W.3d 830, 836 (Tex. App.—San Antonio 2011, no pet.) (citing *Hudson*, 711 S.W.2d at 630). The doctrine operates to narrow the issues in successive stages of litigation and is based upon goals of "uniformity of decision as well as judicial economy and efficiency." *Hudson*, 711 S.W.2d at 630.

The doctrine only applies to questions of law and not to questions of fact. *Marin*, 373 S.W.3d at 71 (citing *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 20 (Tex. App.—San Antonio 2006, pet. denied); *J.O. Lockridge Gen. Contractors, Inc. v. Morgan*, 848 S.W.2d 248, 250 (Tex. App.—Dallas 1993, writ denied)). The doctrine applies if the facts in the second trial are substantially the same as in the first trial or so nearly the same that they do not materially affect the legal issues involved in the second trial. *J.O. Lockridge*, 848 S.W.2d at 250. A reviewing court does not again pass upon any matter either presented to or directly passed upon or which was in effect disposed of on a former appeal to that court. *Id.* A determination by an appellate court that the evidence is legally insufficient to

25

support a finding involves a question of law and falls within the ambit of the "law of the case" doctrine. *Lee v. Lee*, 44 S.W.3d 151, 153 n.5 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). We recognize that there may be a critical difference between a summary judgment and a trial on the merits in regard to the law of the case doctrine since, on review of summary judgments, the appellate court is limited in its consideration of issues and facts, whereas when the case is again appealed after trial on the merits, pleadings and evidence may be different, the parties may be different, and the scope of review is different in that, for example, the appellate court must view the evidence in the light most favorable to the nonmovant in reviewing a summary judgment. *See Hudson*, 711 S.W.2d at 631 (citing *Governing Bd. v. Pannill*, 659 S.W.2d 670, 680–81 (Tex. App.—Beaumont 1983, writ ref'd n.r.e.) (noting that on a traditional summary judgment, the movant must establish conclusively his theories of recovery or defense)).

Here, however, the parties are not different. There has been no amendment of the plaintiff's pleadings since the case was first filed. And there is no difference whatsoever in the proof, or the lack thereof, between the summary judgment reviewed in the first appeal and the trial reviewed in this appeal. Therefore, in this case, the holding of this court in the first appeal that Poteet produced no evidence to raise an issue of fact under the doctrine of concurrent causation on her claim that her alleged damages were covered applies equally to our review of this appeal. The record reflects no evidence segregating Poteet's

covered damages solely caused by the heat exchangers, and our holding in the first appeal in that regard is, therefore, law of the case on this appeal.[7]

In the trial on remand for breach of the appraisal provision, Poteet's expert, Miller, testified live, whereas his previous testimony in the summary judgment proceedings was by deposition, but his testing and his testimony was the same as in the prior proceedings. He again failed to address the sources of the soot or to separate Poteet's damages from soot caused by the faulty heat exchangers from soot caused by other sources. In effect, Poteet has succeeded in obtaining an award of unsegregated damages by the judgment on the jury's verdict for her insurance claim for additional property damages without proof that the loss was covered and despite this court's ruling that Poteet "can recover damages only for a loss that is covered under the policy." *Poteet*, 2007 WL 4371359, at *6.[8]

---

[7]While Farmers did not plead the doctrine of "law of the case" in its motion for judgment notwithstanding the verdict in the trial court, it repeatedly brought our holding on the prior appeal to the trial court's attention and argued that our affirmance of the no-evidence summary judgment against Poteet based on Poteet's failure to produce evidence as required by the doctrine of concurrent causation to establish that her damages resulted solely from a covered risk barred her from contending otherwise at trial or in this appeal. Moreover, a party cannot waive the doctrine of the "law of the case" because it protects our opinion and judgment. *Trinh*, 340 S.W.3d at 836; *J.O. Lockridge*, 848 S.W.2d at 251.

[8]Moreover, the $31,300.00 in soot-related damages could not have been foreseen or contemplated at the time the parties agreed to the appraisal provision because those damages do not relate to the appraisal procedure. They relate to coverage. The parties never foresaw or contemplated that Farmers's breach of the appraisal provision would make Farmers liable for soot-related damages that Poteet never proved were covered. In short, breach of an appraisal provision cannot create coverage where none exists.

27

Poteet argued in the trial court, and the trial court apparently agreed, that the appraisal provision ". . . if followed through, would have resulted in [Poteet] being compensated for [her] loss. Significantly, the parties would have been bound by such determination and subsequent litigation would have been avoided." This argument assumes that, if followed through, the appraisal process would have resulted in a "binding" award to Poteet for all of the amount of "loss" she originally sought in this suit but which we held she failed to prove in the first appeal. This is not the meaning of the word "binding" in the appraisal provision or the intent of the policy.

After our prior decision remanding Poteet's claim for breach of the appraisal provision but before trial on that claim which is now before us on appeal, the supreme court decided *Johnson*, addressing for the first time the scope of appraisal in the context of an appraisal clause sought to be enforced by an insured against the insurer, who contended that appraisal was not appropriate because the dispute involved causation and coverage. 290 S.W.3d at 889. The supreme court first noted that appraisal clauses are contained in virtually every homeowners' and other property policies as a means of resolving disputes about the "'amount of loss' for a covered claim." *Id.* at 888–89. The issue as presented was whether, when issues of causation, and ultimately coverage and liability are involved, a dispute nevertheless falls within the scope of appraisal. *Id.* at 889. First, the court recited briefly from its few decisions discussing the scope of appraisal, noting that, historically, an appraisal clause "only binds the parties to

28

have the extent or amount of the loss determined in a particular way, leaving the question of liability for . . . the courts" and concluding that the scope of appraisal is "damages, not liability." *Id.* at 889–90, 890 n.19 (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 9–10, 8 S.W. 630, 631 (1888)). The court further noted that appraisal clauses generally do not define the scope of appraisal but that the ordinary meaning of the term "appraisal" is "[t]he determination of what constitutes a fair price; valuation; estimation of worth." *Id.* at 890 n.22 (citing 15 COUCH ON INSURANCE § 210:42 ("As a general rule, the sole purpose of an appraisal is to determine the amount of damage.")).

But an appraisal does not necessarily determine the amount of a *covered* loss. As the supreme court stated: "[W]hen different causes are alleged for a single injury to property, causation is a liability question for the courts." *Id.* at 892. "By contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* The court traced the distinction between damage questions for appraisers and liability questions for courts, concluding that "limiting appraisal to damages and not liability is surely still correct." *Id.* at 889–90. The court added that "in most cases appraisal can be structured in a way that decides the amount of loss without deciding any liability questions," again noting and thereby emphasizing that "when an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts." *Id.* at 894. The policy "directs the appraisers to

29

decide the 'amount of loss', not to construe the policy or decide whether the insurer should pay." *Id.* at 890.

Here, the injury to Poteet's property was soot damage, an indivisible injury with several possible causes. The appraisers could have assessed the total amount of the soot damage, but the causes of the damage were for the court. Poteet still had the burden of segregating that damage into what was covered and what was not. She failed to do so, and in the prior appeal, we held that Farmers was entitled to a no-evidence summary judgment because Poteet produced "no evidence that Farmers Group breached its contract" by failing to pay any covered damages. *Poteet*, 2007 WL 4371359, at *7.

Therefore, Poteet is incorrect in arguing that Farmers would have compensated her for her soot-related loss, covered or not, if Farmers had complied with the appraisal provision. The appraisers might have determined the entire amount of her claimed soot-related loss to her furniture, her carpets, and her house, but they would not have been required to segregate that loss between covered and non-covered damages. Under the doctrine of concurrent causation, this burden belonged to Poteet. She was not entitled to recover under her insurance policy unless she proved that her loss was covered by the policy. *See id.* at *6 (citing *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 258 (Tex. App.—Austin 2002, pet. granted, judgm't vacated, w.r.m.); *Wallis*, 2 S.W.3d at 303). Poteet cannot wire around the doctrine of concurrent causation and recover her

unsegregated soot-related loss simply by showing that Farmers failed to have that loss appraised.

### Judgment N.O.V.

A trial court may disregard a jury verdict and render judgment notwithstanding the verdict (JNOV) if no evidence supports the jury findings necessary to liability or if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 454 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g).

What are Poteet's actual damages resulting from Farmers's breach of the procedural provision in the policy? The jury answered this question by awarding $8,000.00 in attorney's fees and litigation expenses. The trial court erred in failing to disregard the jury's answers to the damage issues regarding Farmers's liability for soot-related losses to her personal property and in awarding Poteet $20,000.00 for the loss in fair market value of her house "that was a natural, probable, and foreseeable consequence of [Farmers's] failure to comply with the

31

appraisal provision. . . ." and $11,300.00 for "[t]he actual present cash value for each item of personal property that was at issue during the appraisal process."

Farmers filed its motion for JNOV prior to the entry of the judgment in this lawsuit. The motion sought a judgment of $8,000.00, and included arguments against the awards for personal property and loss in market value of the house. Despite these arguments, the trial court entered the judgment for all the amounts awarded by the jury. The trial court erred in failing to grant Farmers's motion for JNOV.

### *Attorney's Fees*

The attorney who assumed Poteet's representation and filed the suit for damages against Farmers in Denton County represented her throughout the case—including the summary judgment proceedings in which she did not prevail, the appeal to this court in which she did not prevail with the exception of the claim for breach of the appraisal provision, the petition to the supreme court that was denied, the jury trial regarding her claimed damages as a result of that breach, and this appeal—testified at trial that his fees for the entire litigation totaled $401,144.00. He segregated out fees for "things that we could not receive attorney's fees for," in the amount of $53,493.00. But the only fees segregated out were for the portion of the suit against the Kaisers. The remainder was $347,651.00. Then, he "further segregated this thing so that everybody will understand how much we have spent for this particular case, the

appraisal process." This amount, $243,355.70, was precisely seventy percent of the remainder.

In *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006), the supreme court reaffirmed the rule that if any portion of an attorney's fees relates solely to a claim for which fees are unrecoverable, the claimant "must segregate recoverable from unrecoverable fees." *Id.* at 313. "Parties seeking attorney's fees under Texas law 'have always been required to segregate fees between claims for which they are recoverable and claims for which they are not.'" *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 521 (Tex. App.—Fort Worth 2009, no pet.) (quoting *Chapa*, 212 S.W.3d at 311).

The exhibit showing Poteet's attorney's fees does not indicate that the fees have been segregated between those incurred for recoverable and non-recoverable claims. There is merely an estimate at the bottom of the exhibit that seventy percent of the fees are recoverable. The exhibit itself is full of charges for non-recoverable fees for claims involving the Kaiser co-defendants and for claims against Farmers on which Poteet did not prevail, including the first round of summary judgment motions, preparations for trial in 2006, appellate work that preceded the first appellate court decision, and appellate work seeking reconsideration and supreme court review.

An attorney can provide a rough estimate of the percentage of time necessarily spent on a claim that was part of the overall lawsuit. *Chapa*, 212 S.W.3d at 314 n.83; *Schenck v. Ebby Halliday Real Estate, Inc.*, 803 S.W.2d

33

361, 369 (Tex. App.—Fort Worth 1990, no writ). But here, Poteet's attorney made his "rough estimate" by lumping together hundreds of hours spent working to recover damages that Farmers had no duty to pay. Most significantly, there is no estimate of the reasonable and necessary fees incurred in pursuing the sole claim that survived the first appeal of this lawsuit.

The supreme court held in *Smith v. Patrick W. Y. Tam Trust* that the jury should consider "the amount involved and the results obtained," among other things. 296 S.W.3d 545, 548 (Tex. 2009) (quoting *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). It added that the degree of the plaintiff's overall success goes to the reasonableness of a fee award, and the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Id.* (citing *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992)).

Poteet failed to segregate her attorney's fees related to the alleged breach of the appraisal provision from those fees incurred in pursuit of the claims upon which she did not prevail in the prior appeal from the summary judgment and the claims upon which we have held that damages are not recoverable on this appeal. However, her failure to segregate her attorney's fees does not mean she cannot recover any fees at all. Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be. *Chapa*, 212 S.W.3d at 314. And a remand is required for a separate but equally important reason. Because we have held that the trial court erred in failing to disregard jury

34

findings of damages totaling $31,300.00, the award of attorney's fees must be redetermined for that reason as well. *See The Long Trusts v. Griffin*, 222 S.W.3d 412, 417 (Tex. 2007); *Barker v. Eckman*, 213 S.W.3d 306, 314–15 (Tex. 2006).

## IV. Poteet's Cross-Point

By cross-point, Poteet complains of the jury's failure to find any damages based on the fair-rental value and maintenance costs of her home during the three-year period that it was vacant. The jury failed to find any damages regarding either of the following two elements submitted by Question 4: "reasonable and necessary cost of alternative living quarters" and "reasonable and necessary costs for maintenance of the home," if any, resulting from Farmers's failure to comply with the appraisal provision. Her argument under this cross-point concerns only the latter element of damages.[9]

Poteet testified that she moved out of the house in April 2003, after returning to it briefly following some of the remediation, and lived in a small cabin until she sold the property at a loss in August 2006. She recites in her testimony that the fair rental value of the property during those three years was between $2,200.00 and $2,500.00 per month, conservatively estimating an annual rental value of $26,400.00, and that she also had to pay insurance of $2,400.00 per

---

[9]When the party *with* the burden of proof complains of a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006). Poteet had the burden of proof to establish her damages resulting from the breach of the appraisal provision of the insurance contract.

35

year, taxes of $4,850.00 per year, and maintenance costs of about $2,000.00 per year, which totaled $106,950.00 over the three years.

Poteet's testimony was, indeed, uncontroverted regarding these amounts. However, we have found no evidence, much less overwhelming evidence, that either the three-year vacancy of the house or the expenses and losses Poteet incurred from lost rental value or maintenance during that period resulted from, were caused by, or would not have been incurred but for Farmers's breach of the appraisal provision, either as direct or consequential damages.[10] Poteet testified that she moved out shortly after moving back into the house in December 2003 because the floors were bare and there was no furniture, but she acknowledged that this was because she refused to allow the carpet to be replaced or the cleaned furniture returned.[11] She also testified that workers were coming to the house and cleaning during its vacancy.

Poteet sold the house in August 2006, over a year and a half after the appraisal suit in which neither Farmers nor Poteet's attorney ever took any action to obtain appointment of an umpire or to compel the appraisal process to proceed was dismissed for want of prosecution in January 2005. Poteet refused

---

[10]In fact, lost rental value was not included as an element of damages submitted to the jury nor did Poteet request submission of that element in the charge.

[11]She moved to the tiny "cabin" in Buffalo Gap for only seven or eight months. She then moved to a rental house in Rising Star and thereafter bought a home there.

36

to move back into the house and allowed it to remain vacant for three years because she "believed" the house was unsafe for her and her daughter based upon her belief that the house was still not clean, which she said was based in part on Miller's opinion that the house was unsafe, which he formulated, in turn, from Poteet's description and from viewing some photographs before he inspected the house or conducted any testing. Poteet also testified that she waited three years to sell the house because she "was told" by others that she had to keep it available if more tests or photographs were needed. She qualified that statement by adding again that she "felt" that the house had not been cleaned up and that people were still going in and out of the house.[12]

Poteet's attorney of record in the appraisal suit testified she never sought appointment of an umpire because, among other reasons, there was "no reason to pursue that avenue" because all avenues would be taken up in the Denton County suit filed in May 2004. Since the appraisal provision was never pursued to a conclusion, there is no evidence how it could be causally connected to the three-year vacancy of the house.

Arguably, expenses necessarily incurred in maintaining a house and loss of rental value (even though there is no evidence that Poteet ever sought to

---

[12]Poteet complained that the house made her sick, but her attorney acknowledged that no medical report was ever sent to Farmers connecting her complaints to the condition of the home. No medical report or expert testimony was produced at trial suggesting that there was any remaining soot in the air that would affect her health or anyone else's.

lease the house to a tenant) could constitute recoverable consequential damages from a refusal or delay by an insurer to comply with an appraisal provision, but we see no causal connection between the damages sought and the breach of the appraisal provision in this case that could be inferred from the relevant dates or events. We hold that the jury's failure to find any amount of damages for lost rental value or for Poteet's expenses incurred in maintaining the house for three years is not against the overwhelming weight of the evidence. Accordingly, we overrule her cross-point.

## V. Conclusion

We sustain Farmers's issues one, two, and three in that the trial court erred in failing to disregard the jury findings of damages of $11,300.00 for actual present cash value for each item of personal property that was at issue in the appraisal process and $20,000.00 for loss of fair market value of the residence in answer to Question 4 of the charge. We reverse the trial court's judgment awarding Poteet those amounts and render judgment that she take nothing for actual present cash value for each item of personal property that was at issue in the appraisal process and nothing for loss of fair market value of the residence. We affirm that portion of the judgment awarding Poteet $6,500.00 for reasonable and necessary attorney's fees incurred as a result of Farmers's failure to comply with the appraisal provision and $1,500.00 for reasonable and necessary litigation expenses associated with Farmers's failure to comply with the appraisal provision. We reverse that portion of the judgment awarding $200,000.00 for

reasonable and necessary attorney's fees as found by the jury in Question 5, and we remand that portion of the case for further proceedings consistent with this opinion.  We also overrule Poteet's cross-point.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED:  May 22, 2014