**Motions for Rehearing Denied, Reversed and Remanded, and Substitute Majority and Dissenting Opinions filed October 4, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00474-CV

---

### TEXAS WINDSTORM INSURANCE ASSOCIATION, Appellant

### V.

### DICKINSON INDEPENDENT SCHOOL DISTRICT, Appellee

---

**On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Cause No. 12-CV-2012**

---

## S U B S T I T U T E   M A J O R I T Y   O P I N I O N

The parties' motions for rehearing are denied.[1]  We withdraw our May 31, 2018 majority opinion and substitute the following in its stead.  Our judgment remains unchanged.

---

[1] Chief Justice Frost would grant in part Dickinson Independent School District's Motion for Rehearing.

Today we consider whether Dickinson Independent School District ("DISD") is entitled to judgment for breach of contract damages against Texas Windstorm Insurance Association ("TWIA") based on an appraisal award.

DISD sued TWIA in connection with TWIA's handling of DISD's Hurricane Ike claims. DISD alleged breach of contract and related claims. During the proceedings, TWIA invoked the insurance policy's appraisal provisions, and the resulting appraisal award totaled $10.8 million in damages. DISD amended its petition to abandon all claims except breach of contract and, based on the appraisal award, filed traditional motions for partial summary judgment on the elements of causation and damages. TWIA opposed the motions because, among other things, DISD had not conclusively proven that the alleged damages reflected in the appraisal award, or any portion of them, were caused by covered perils. The trial court granted both motions in DISD's favor. The case proceeded to trial and the sole question put to the jury was whether TWIA breached the policy by failing to pay the appraisal award, which the jury answered affirmatively. The trial court signed a final judgment against TWIA for $9,602,542.82.

TWIA challenges the trial court's judgment in the following issues:

- In its first issue, TWIA challenges the orders granting partial summary judgment on causation and damages because DISD did not conclusively prove (or TWIA raised genuine issues of material fact) that DISD's alleged damages were caused by a named peril or covered by the TWIA policy. Further, TWIA asserts that DISD did not meet its burden to prove coverage at trial through expert testimony. As a remedy, TWIA requests rendition of judgment as a matter of law or remand for new trial.

- In its second issue, TWIA contends that the trial court reversibly erred in excluding TWIA's trial evidence supporting its affirmative defenses.

- In issue three, TWIA urges that the trial court erred in submitting DISD's jury question and in refusing to submit TWIA's proposed question and instructions.

2

- Finally, in its fourth issue, TWIA contends that legally insufficient evidence supports the jury's finding that TWIA breached the policy by not paying the appraisal award or that TWIA's failure to pay the award proximately caused the damages reflected in the judgment.

For the reasons explained below, we sustain TWIA's first issue in part and hold that the trial court erred in granting DISD's motions for partial summary judgment on causation and damages because DISD's evidence, including the appraisal award, did not conclusively prove whether and how much alleged loss was caused by a covered peril and otherwise subject to coverage under the policy terms and conditions. Having sustained this portion of TWIA's first issue, we further conclude that remand for further proceedings, as opposed to rendition of judgment, is the appropriate remedy under the present circumstances. Given our resolution of TWIA's first issue, reaching TWIA's remaining issues is not necessary to final disposition of this appeal. *See* Tex. R. App. P. 47.1. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## Background

TWIA issued a windstorm and hail commercial policy of insurance to DISD, the named insured. The relevant policy period was from September 1, 2008 to September 1, 2009. As to each covered property, the policy provided for two potential forms of coverage depending on whether a limit of liability for a particular form of coverage was shown in the declarations. The two forms of coverage were identified in the policy as "COVERAGE A (Building)" or "COVERAGE B (Business Personal Property)." The policy provided in relevant part[2] as follows:

---

[2] We do not opine on the merits or applicability of any policy exclusions or terms, whether or not quoted in this opinion.

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

***

## COVERED CAUSES OF LOSS

We insure for direct physical loss to the covered property caused by windstorm or hail unless the loss is excluded in the Exclusions.

## EXCLUSIONS

The following exclusions apply to loss to covered property:

1.  Flood.

    We will not pay under any and all circumstances for loss or damage caused by or resulting from flood, surface water, waves, storm surge, tides, tidal water, tidal waves, tsunami, seiche, overflow of streams or other bodies of water, or spray from any of these, all whether driven by wind or not.

    ***

6.  Rain.

    We will not pay for loss or damage caused by or resulting from rain, whether driven by wind or not unless wind or hail first makes an opening in the walls or roof of the described building. Then we will only pay for loss in the interior of the building, or the insured property within, caused immediately by rain entering through such openings.

    ***

## CONDITIONS
***

4.  Duties After Loss.

    a.  Your Duties After Loss. In case of a loss to covered property caused by windstorm or hail you must:

        (1) Give us prompt written notice. Include a description of the property involved;

        (2) Protect the property from further damage;

4

(3) Make reasonable, necessary, and temporary repairs to protect the property;

(4) Keep an accurate record of repair expenses;

(5) Furnish a complete inventory of damaged personal property showing the quantity, description, and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory. . . .

***

10. Appraisal. If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent and independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose a competent and independent umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then determine the amount of loss, stating separately the actual cash value and loss to each item.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will determine the amount of the loss.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

Hurricane Ike struck Galveston County, Texas on September 13, 2008, during the effective dates of the TWIA policy. Three days later, DISD notified TWIA of windstorm damage to several of its buildings. TWIA acknowledged DISD's claim and hired an adjuster to manage the claim. TWIA's adjuster and DISD personnel inspected DISD's campuses and documented the damage found. TWIA's adjuster verified damages exceeding policy deductibles on numerous insured structures and sent the documentation to DISD personnel for review. In December 2009, TWIA paid DISD $220,232.85 for these damages. DISD subsequently signed a proof of

loss, reflecting the cash value of the claim, as well as depreciation that TWIA would pay upon completion of repairs. TWIA paid DISD recoverable depreciation of $8,667.80 in March 2010.

In September 2011, DISD contacted TWIA concerning a roof on one of DISD's buildings. DISD had replaced the roof and sought reimbursement of $1,550,645.75 as additional damages caused by Hurricane Ike. TWIA paid $999,577.19 for this supplemental claim in October 2011 (DISD's "Roof Claim"), though apparently no documentation was provided establishing a wind-created opening on the roof. This amount did not include general contractor overhead and profit amounts. In March 2012, DISD provided a new sworn proof of loss.

The following September, DISD filed the instant lawsuit against TWIA. DISD claimed that TWIA breached its contract, violated the Texas Insurance Code, breached its duties of good faith and fair dealing, and committed fraud. Prior to filing suit, DISD did not notify TWIA of any additional losses it contended were covered under the policy. TWIA asserted a general denial and several affirmative defenses.

DISD demanded that TWIA pay $311,623.04 for overhead and profit related to DISD's Roof Claim, $292,942.12 in statutory interest, and $225,000 for attorney's and expert fees, for a total of $829,566.16.[3] In response, TWIA invoked the policy's appraisal clause.

DISD designated Mark Domangue as its appraiser, and TWIA selected Jonathan Held. The trial court appointed former judge Donnie Ray Burgess as umpire over TWIA's objection. Initial appraisal inspections occurred between

---

[3] DISD also notified TWIA that DISD was in the process of selling one of its insured buildings and asked TWIA to expedite inspection of that property while it was still under DISD's control.

October 1 and October 9, 2013. By that time, DISD already had repaired, replaced, or sold some of the damaged property for which it claimed further compensation was due under the policy. Domangue provided Held his initial damages estimates in early June 2014. Held reciprocated two months later and also sent Domangue a comparison detailing the differences in their initial estimates. Held and Domangue met to review estimates. They agreed to some items and changes, but were unable to agree on an overall damages estimate. They were to exchange revised estimates for final review before meeting with Burgess. Domangue did not provide Held with his revised appraisal, but instead informed Held that the revisions were not "significant" and would not change his overall summary.

Burgess inspected DISD's buildings in March 2015. Neither Held nor Domangue were present when Burgess inspected the buildings. Burgess, Held, and Domangue met in early April 2015 to review the appraisers' estimates. At this meeting, Held discovered that Domangue's revised estimates increased DISD's claim by $6 million.

Ultimately, Burgess and Domangue signed an appraisal award that totaled $10,815,967.43 (the "Appraisal Award"). Held did not sign the Appraisal Award.

After the Appraisal Award was issued, DISD filed several motions for partial summary judgment, including a no-evidence motion regarding TWIA's affirmative defenses to the Award, a traditional motion on causation or alternatively to exclude evidence of causation, a traditional motion on the amount of DISD's damages, and a traditional motion on DISD's breach of contract claim. The trial court denied DISD's motions on TWIA's affirmative defenses and DISD's contract claim. The relevant motions for purposes of this appeal are DISD's motions on causation and property damages. In both motions, DISD argued that the Appraisal Award

conclusively established certain elements of DISD's breach of contract claim, namely the amount of damages caused by wind from Hurricane Ike.

TWIA filed responses to both motions, arguing that the Appraisal Award did not conclusively establish, or address, whether the damages identified therein were caused by a covered peril. TWIA also provided, *inter alia*, evidence that DISD's alleged damages were caused by events other than covered perils. The trial court granted DISD's motions on causation and property damages less than a week before trial began.

At a pretrial hearing, DISD argued that the court's summary judgment orders on causation and damages foreclosed all of TWIA's affirmative defenses, as well as any argument or evidence by TWIA at trial that any portion of the damages listed in the Appraisal Award were not covered by the policy. TWIA responded that, regardless of the partial summary judgment orders, it was entitled to introduce evidence supporting its affirmative defenses and that DISD still had "to prove coverage." The trial court ruled that the summary judgment order on damages "forecloses all affirmative defenses regarding the amount of damages." Similarly, the trial court ruled that "the issue of causation is foreclosed given that there is an appraisal and the previous decisions made regarding this case."[4]

Trial commenced after the pretrial hearing. Because DISD had nonsuited its extra-contractual claims pretrial, the only remaining disputed issue for the jury to determine was whether TWIA breached its insurance contract. After a five-day trial,

---

[4] Subsequently, TWIA filed a formal bill of exceptions that included evidence related to numerous "affirmative and factual defenses" that the trial court had ruled inadmissible, including evidence that the Appraisal Award did not accurately or reliably reflect covered windstorm damage that DISD sustained from Hurricane Ike, that the Appraisal Award did not segregate between covered and uncovered damage, and that appraisals generally, and this one specifically, lack the preclusive effect claimed by DISD and found by the court.

the jury was asked to decide a single issue: "Did Texas Windstorm Insurance Association fail to comply with the agreement entitled Texas Windstorm Insurance Association Policy Windstorm and Hail?"[5] The jury answered, "Yes." Based on the jury's verdict, DISD moved to enter judgment; TWIA opposed entry on various grounds. The trial court signed a final judgment in which it ordered that DISD recover from TWIA a total of $9,602,542.82, comprised of the following amounts: $8,193,168.85 for the Appraisal Award less prior payments, deductibles, and sales tax; $159,373.97 in interest on the award; and $1,250,000.00 in attorney's fees.

TWIA timely moved for judgment notwithstanding the verdict or for a new trial. In its motions, TWIA asserted, in pertinent part, that no legally sufficient evidence supported causation or coverage. Additionally, TWIA argued that, because DISD had "de-designated" its only causation expert before the trial court ruled on DISD's summary judgment motion, DISD had not proved, and could not prove, that the Appraisal Award reflected only damages covered by the insurance policy. TWIA also challenged the trial court's striking of its affirmative defenses. TWIA's post-trial motions were overruled by operation of law, and this appeal timely followed.

**Analysis**

In its first issue, TWIA claims that the trial court erred in granting partial summary judgment on causation and damages. As part of this issue, TWIA argues that DISD did not conclusively establish how much of DISD's alleged damages, if

---

[5] TWIA objected to this question and submitted its proposed charge to the trial court, which was refused. In its proposed charge, TWIA sought jury determinations of numerous issues, including whether the Appraisal Award should be set aside for various reasons, whether the Appraisal Award complied with the insurance policy terms and conditions, and whether DISD provided prompt written notice of loss for each of its insured structures.

any, were caused by wind and covered by the policy because the Appraisal Award by itself fails to prove these contested issues.

## A.     Standard of Review

We review a trial court's grant of summary judgment de novo. *Exxon Corp. v. Emerald Oil & Gas Co.*, 331 S.W.3d 419, 422 (Tex. 2010). A trial court properly grants summary judgment if the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). We indulge every reasonable inference and resolve all doubts in the non-movant's favor. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990).

A movant seeking a traditional summary judgment must establish its right to that relief by conclusively proving all elements of the movant's claim as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000). Here, DISD moved for partial summary judgment, so it was required to conclusively prove only those elements raised in its motion. *See* Tex. R. Civ. P. 166a(a) (explaining that claimant may move for summary judgment "upon all or any part thereof" of its claim). If the movant's motion and summary judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the non-movant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). On the other hand, if the movant fails to meet its initial summary judgment burden, the summary judgment cannot stand regardless whether the non-movant responds. *See Grynberg v. Grey Wolf Drilling Co.*, 296 S.W.3d 132, 137 & n.13 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (summary judgment must stand on its own merits; non-movant has no burden to respond unless movant

conclusively establishes entitlement to summary judgment); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right."); *Williams Consol. I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895, 900 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (movant bears burden to conclusively prove all elements of its claim or defense).

## B. Scope of Review

Before addressing whether DISD met its summary judgment burden, we consider the scope of evidence properly included within the summary judgment record on appeal. DISD relied on identical evidence to support both of its motions for partial summary judgment: (a) a copy of the TWIA policy, (b) the Appraisal Award, (c) TWIA's live answer, and (d) TWIA's letter invoking the appraisal process. After TWIA responded to DISD's motions, DISD filed various replies and supplements, which attached additional evidence. All of DISD's evidence other than the evidence attached to its initial motions was filed within twenty-one days of the summary judgment hearing, which generally is not timely absent leave of court. *See* Tex. R. Civ. P. 166a(c). TWIA contends that DISD did not secure leave to file any evidence late and that the only exhibits properly before the trial court at the time it granted partial summary judgment were those attached to DISD's initial motions, including the Appraisal Award.

Rule 166a requires a party seeking summary judgment to file and serve the motion and any supporting affidavits or evidence at least twenty-one days before the hearing on the motion. Tex. R. Civ. P. 166a(c). If a party intends to use discovery products that have not been filed with the trial court clerk, that party must file an appendix containing the evidence or a "notice containing specific references to the

11

discovery," along with a statement of intent to use the specified discovery, within the applicable time frames. Tex. R. Civ. P. 166a(d).

Summary judgment evidence, either supporting or opposing the motion, may be filed late only with leave of court. *Alphaville Ventures, Inc. v. First Bank*, 429 S.W.3d 150, 154 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing Tex. R. Civ. P. 166a(c); *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996)); *see also Lopez v. Exxon Mobil Dev. Co.*, No. 14-16-00826-CV, 2017 WL 4018359, at *5 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, pet. denied) (mem. op.). Leave to file summary judgment evidence late may be shown by a separate order, a recital in the summary judgment order, or an oral ruling contained in the reporter's record of the summary judgment hearing. *Alphaville Ventures*, 429 S.W.3d at 154 (citing *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). We presume the trial court did not consider late-filed evidence when nothing in the record indicates the trial court granted leave. *Id.*; *see also Lopez*, 2017 WL 4018359, at *5.

DISD's motions for partial summary judgment were set for submission on July 16, 2015. TWIA timely filed its response on July 9. *See* Tex. R. Civ. P. 166a(c). DISD filed a reply to TWIA's response on July 16, attaching new exhibits in support of its motion, including deposition excerpts from Umpire Burgess. DISD did not file a motion for leave to file this evidence late. On July 21, TWIA filed a motion for leave to file a sur-reply, in which it objected to, and moved to strike, both DISD's late-filed reply and new evidence. Late in the afternoon on July 28, DISD filed a supplemental reply, to which DISD attached an additional thirty-nine exhibits. Again, DISD did not seek leave to file this evidence late.

Though DISD set the motions for ruling by submission, the court conducted an oral hearing. At the July 29 hearing, the trial court denied TWIA leave to file a

12

sur-reply to DISD's reply and overruled TWIA's objection to DISD's reply. The trial court did not mention DISD's supplemental reply. The court signed separate orders granting both of DISD's motions on August 7. Each order, respectively, states in full: "After considering Plaintiff DISD's Motion for Summary Judgment on Causation, the Court hereby orders that the motion is GRANTED"; and "After considering Plaintiff DISD's Motion for Summary Judgment on Property Damage, the Court hereby orders that the motion is GRANTED."

Nothing in our record reflects that DISD sought or obtained leave to file the evidence attached to its summary judgment reply or supplemental reply. Although the trial court overruled TWIA's objections to DISD's reply, denying a motion to strike does not equate to granting leave to file evidence late. *See Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 619 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (trial court's denial of motion to strike is not equivalent of leave to file contested evidence) (citing *Dixon v. E.D. Bullard Co.*, 138 S.W.3d 373, 367 n.2 (Tex. App.—Houston [14th Dist.] 2004, pet. granted, judgm't vacated w.r.m.)); *see also Alphaville Ventures*, 429 S.W.3d at 154 (leave of court to file untimely evidence may be shown by separate order, recital in summary judgment order, or oral ruling contained in the reporter's record). DISD never sought leave to file the evidence late, and our review of the record does not reveal an order granting leave, a recital in either summary judgment order indicating the trial court considered DISD's reply or supplemental reply, or an oral ruling in the reporter's record indicating the trial court considered the late-filed evidence.

Accordingly, we conclude that DISD's late-filed evidence was not part of the summary judgment record when the trial court granted DISD's motions for partial summary judgment on causation and damages. Thus, on review, the only evidence

13

we consider in support of DISD's motions is (1) the TWIA policy, (2) the Appraisal Award, (3) TWIA's live answer, and (4) TWIA's letter invoking appraisal.

**C.     DISD did not conclusively establish its entitlement to summary judgment on causation and damages.**

To recover on a breach of contract claim, DISD was required to prove the following elements:  (1) the existence of a valid contract, (2) DISD performed or tendered performance, (3) TWIA breached the contract, and (4) DISD was damaged as a result of the breach.  *Sec. Nat'l Ins. Co. v. Waloon Inv., Inc*., 384 S.W.3d 901, 907 n.2 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  DISD moved for summary judgment on two elements of its contract claim:  causation and damages.  As DISD was the movant, it bore the burden to conclusively establish its entitlement to summary judgment on those elements.  *See, e.g.*, *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511-12 (Tex. 2014).

The contract at issue is an insurance policy.  DISD's motions for summary judgment invoke several well-known principles applicable in the insurance context and pertinent to DISD's burden of proof.  For instance, an insured is not entitled to recover under an insurance policy unless it proves its damages are covered by the policy.  *See, e.g.*, *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 400 (Tex. 2016); *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.—San Antonio 1999, pet. denied).

Under the doctrine of concurrent causes, when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril.  *Travelers Indem. Co. v. McKillip*, 469 S.W.2d

14

160, 163 (Tex. 1971); *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Allison v. Fire Ins. Exchange*, 98 S.W.3d 227, 258 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.); *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 320-21 (Tex. App.—San Antonio 2002, pet. denied), *abrogated on other grounds by Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20 (Tex. 2008). This doctrine is not an affirmative defense or an avoidance issue; instead, it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove the damage is covered by the policy. *Allison*, 98 S.W.3d at 258. The insured must present some evidence upon which the jury can rely to attribute the alleged damages to the covered peril. *Id.* at 258-59; *see also Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965) ("It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy."). Because the insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. *Rodriguez*, 88 S.W.3d at 321. Failure to segregate covered and non-covered perils is fatal to recovery. *Allison*, 98 S.W.3d at 259; *Kelly v. Travelers Lloyds of Tex. Ins. Co.*, No. 14-05-00825-CV, 2007 WL 527911, at *3 (Tex. App.—Houston [14th Dist.] Feb. 22, 2007, no pet.) (mem. op.). "[A]lthough a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests." *Rodriguez*, 88 S.W.3d at 320.

The TWIA policy at issue is a named-perils policy that insures for "direct physical loss to the covered property *caused by windstorm* or hail unless the loss is excluded in the Exclusions." (Emphasis added). Under such a named-perils policy,

15

"all perils not specifically included in the policy are excluded from coverage." *de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 722 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Thus, to obtain judgment against TWIA for breach of the policy, DISD first had to establish that the direct physical losses to its covered property were caused by windstorm or hail—in this instance, windstorm or hail during Hurricane Ike. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) ("Initially, the insured has the burden of establishing coverage under the terms of the policy.").

DISD attempted to meet part of its burden by way of its motions for summary judgment on causation and damages. In both motions, DISD argued that the Appraisal Award conclusively established its entitlement to summary judgment on the causation and damages issues. DISD asserted that the Appraisal Award determined the amount of DISD's losses caused by windstorm. DISD urged that "TWIA cannot now dispute causation" and that permitting TWIA to do so would "essentially render the appraisal process meaningless." [6] Citing *State Farm Lloyds*

---

[6] More particularly, for example, DISD sought summary judgment on causation on these grounds:

> Plaintiff [DISD] moves for summary judgment on the element of causation for all damages. TWIA invoked the appraisal provision of the insurance contract held by DISD. That appraisal was conducted and is now complete. The final appraisal award set the amount of loss at $10,815,967.43. **This amount of loss was determined to be caused by the covered peril of wind.** In setting the amount of loss, the appraisers and umpire necessarily determined what was caused by wind, and what was due to the property's pre-existing conditions. DISD never experienced flooding. **Both parties are now precluded from challenging the amount of loss and the cause of such loss.** DISD is entitled to summary judgment on the element of causation since it has already been determined by the appraisal award.

Similarly, DISD sought summary judgment on damages on these grounds:

> Plaintiff [DISD] moves for summary judgment on the element of causation for all damages. TWIA invoked the appraisal provision of the insurance contract held by DISD. That appraisal was conducted and is now complete. The final appraisal award set the amount of loss at $10,815,967.43. **This amount of loss**

16

*v. Johnson*, 290 S.W.3d 886, 892 (Tex. 2009), DISD argued that the Appraisal Award "resolved all issues of damages and causation for this case."

In response, TWIA asserted, among other things, that appraisal awards determine only damages, not liability. TWIA argued that DISD retained the burden to prove that the damage amounts identified in the Appraisal Award represented "direct physical loss to the covered property caused by windstorm or hail," as required under the policy. Also relying on *Johnson*, TWIA emphasized that "when different causes are alleged for a single injury, causation is a liability question for the courts." *Id.* at 892. In an attached affidavit, TWIA's senior claims analyst, Paul Strickland, noted that the Appraisal Award contains no "causation analysis, leak tracing or identification of 'wind-created openings,' regardless of whether attributable to Hurricane Ike," and that it includes over "$1 million dollars in interior damage . . . without any explanation as to a basis for this finding" and no identification of a wind-created opening. TWIA's appraiser, Jonathan Held, stated in his affidavit that the Award contains "[n]o attempt by the appraiser for the insured or the umpire to segregate damages by cause of loss" and "[n]o attempt by the appraiser for the insured or the umpire to determine loss caused by seepage vs. water damage through openings created by the wind."

The critical issue we must decide, therefore, is whether the Appraisal Award in this case is alone sufficient to conclusively establish that DISD suffered

---

**was determined to reflect the totality of the property damage at DISD as a result of Hurricane Ike.** Both parties are now precluded from challenging this value for the property damage, or from introducing alternative values or estimates of the amount of loss. DISD is entitled to summary judgment on the element of property damage as determined by the appraisal award.

(footnote omitted) (emphases added).

$8,193,168.85 in covered losses.[7] A common feature of Texas insurance policies,[8] appraisal clauses "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2012) (orig. proceeding); *see also Johnson*, 290 S.W.3d at 888. An appraisal provides an extra-judicial "remedy for any disagreement regarding the amount of loss." *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied). However, appraisers are "not to construe the policy or decide whether the insurer should pay." *Johnson*, 290 S.W.3d at 890; *see also In re Security Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *6 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op.) ("Appraisal is limited to determining the amounts of loss, and not determining whether the insurer should pay."), *abrogated on other grounds by In re State Farm Lloyds*, 514 S.W.3d 789 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). Although the "line between liability and damage questions may not always be clear, . . . . the scope of appraisal is damages, not liability." *Johnson*, 290 S.W.3d at 890; *see In re Allstate Cty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding); *Waloon*, 384 S.W.3d at 905; *Standard Fire Ins. Co. v. Fraiman*, 514 S.W.2d 343, 344-45 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ).

In *Johnson*, the Supreme Court of Texas discussed extensively the importance of ensuring that appraisal awards do not nullify insurance policy requirements. "Causation relates to both liability and damages because it is the connection between them." *Johnson*, 290 S.W.3d at 891-92. Appraisal clauses generally estop a party

---

[7] As noted above, this amount reflects the Appraisal Award less prior payments, deductibles, and sales tax.

[8] Appraisal clauses are "uniformly included in most forms of property insurance policies." *Johnson*, 290 S.W.3d at 888.

from contesting damages,[9] but *liability* questions are reserved for courts, such as when, as we have here, different causes are alleged for a single injury to property. *See id.* "Appraisers can decide the cost of repairs in this context, but if they can also decide causation there would be no liability questions left for the courts." *Id.* at 892; *see also Farmers Grp. Ins., Inc. v. Poteet*, 434 S.W.3d 316, 325, 331 (Tex. App.— Fort Worth 2014, pet. denied). "By contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability." *Johnson*, 290 S.W.3d at 892. In this context, courts can decide whether a particular type of damage is covered, "but if [courts] can also decide the amount of damage caused by each, there would be no damage questions left for the appraisers." *Id.*

> The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition. Wear and tear is excluded in most property policies . . . because it occurs in every case. If . . . appraisers can never allocate damages between covered and excluded perils, then appraisals can never assess hail damage unless a roof is brand new. That would render appraisal clauses largely inoperative, a construction [courts] must avoid.

*Id.* at 892-93 (footnotes omitted).

Distinguishing between causation as a liability issue or causation as a damages issue may be complicated. An "appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.* "[W]hether the appraisers have gone beyond the damage questions entrusted to them will depend on the nature of the damage, the possible causes, the parties'

---

[9] *See Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 2017, pet. filed); *Pounds v. Liberty Lloyds of Tex. Ins. Co.*, 528 S.W.3d 222, 228 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

19

dispute, and the structure of the structure of the appraisal award." *Id.* at 893. In no event, though, may appraisers "rewrite the policy." *Id.* "No matter what the appraisers say, [the insurance company] does not have to pay for repairs due to wear and tear or any other excluded peril because those perils are excluded." *Id.* Appraisal awards may be disregarded when they do not comply with policy terms, *Franco*, 154 S.W.3d at 786, and, even if no party seeks to disregard an appraisal award, the award still must be construed and applied in compliance with the policy. *Waloon*, 384 S.W.3d at 905.

Several cases decided since *Johnson* confirm that, although courts afford appraisal awards due deference, appraisals do not supplant the judicial process. *See, e.g.*, *Waloon*, 384 S.W.3d at 905 (appraisal award, standing alone, does not determine the merits of a breach of contract claim; appraisal is limited to determining amount of loss, not whether an insurer should pay); *see also MLCSV10 v. Stateside Enters., Inc.*, 866 F. Supp. 2d 691, 704-07 (S.D. Tex. 2012) (applying *Johnson* and setting aside portions of award in which appraisers made impermissible coverage decision based on determination that "no covered event caused the ductwork damage"); *Amtrust Ins. Co. of Kan., Inc. v. Starship League City, L.P.*, No. 4: 11-CV-00672, 2012 WL 2996489 (E.D. Tex. June 4, 2012), (appraisal process does not replace judicial process; party still has the right to ask a court to interpret its rights and obligations under policy); *Glenbrook Patiohome, Owners Ass'n v. Lexington Ins. Co.*, No. H-1 0-2929, 2011 WL 666517, at *10 (S.D. Tex. Feb. 14, 2011) (loss-valuation issues should be determined by appraisal, but coverage disputes should be determined by the court).

The policy at issue covered only direct physical loss to property *caused by* the named perils of wind and hail. It explicitly excluded loss or damage caused by or resulting from "rain, whether driven by wind or not unless wind or hail first makes

20

an opening in the walls or roof of the described building." Even then, the policy covers only loss to the interior of the building or insured property "caused immediately by rain" entering through a wind- or hail-created opening.

The present matter is not one lacking dispute about whether the alleged damage was in fact caused by a covered peril. *See Johnson*, 290 S.W.3d at 891 ("On appeal, [the insurer] emphasizes it is disputing not just which singles were damaged, but which were damaged *by hail*. But nothing in the summary judgment record establishes [the policy holder's] roof was damaged by anything else."). In its original and amended answers, TWIA alleged that DISD's claimed damages were caused by non-covered events or perils. Five years had passed between Hurricane Ike and the appraisal inspections; during that period further weather conditions and ordinary wear and tear impacted the post-Ike condition of the DISD properties. The summary judgment record contains evidence raising genuine issues of material fact about the cause of the damage to DISD's buildings.[10] For example, TWIA attached deposition testimony from the adjusters who inspected DISD's buildings in the immediate aftermath of Hurricane Ike. Both stated that they had not seen any wind damage to many of the buildings included within the Appraisal Award's scope. DISD's representative, Ryan Boone, acknowledged that DISD had no documentation of any wind-created openings that had caused the interior damage to

---

[10] *Cf. Paulson*, 393 S.W.2d at 319 (rendering judgment in favor of insurer because insured failed to present evidence that damages were caused by wind "independent of all other causes"; "It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage or the proportionate part of damaged caused by a risk covered by the insurance company."); *Farmers Grp.*, 434 S.W.3d at 325, 329-31 (holding, in a case involving soot damage that may have arisen from multiple causes, the insured bore the burden of segregating her loss between covered and non-covered damages; because her expert failed to do so, she did not establish she was entitled to recover under her insurance policy); *Kelly*, 2007 WL 527911, at *7 (affirming summary judgment in favor of insurer because "[a]lthough the summary judgment evidence showed the Kellys' home may have had mold contamination, it did not show that their personal property was contaminated by mold due to a covered peril, i.e., a plumbing leak").

21

DISD's buildings reflected in the Appraisal Award. Boone also acknowledged that warranty work had been completed on a portion of a roof at one of the buildings reflected in the award, yet the award reflected compensation for damages to interior rooms under the portion of the roof that had been repaired pursuant to a warranty. Boone agreed that any such damages were not caused by Hurricane Ike winds.[11] TWIA also argued that the Appraisal Award included items for which DISD did not provide notice as the policy required. From this evidence, a factfinder reasonably could infer that at least some of the damages referenced in the Appraisal Award were not caused by Hurricane Ike windstorm or wind-driven openings, but instead by subsequent events, including later weather conditions that occurred in the five years following the storm's landfall.[12]

Under the specific facts of this case, causation is a liability question for the court.[13] The only causation evidence before the trial court on summary judgment was the Appraisal Award itself. Adhering to the authority discussed above, we agree with TWIA that DISD's reliance on the Appraisal Award is insufficient to

---

[11] Boone stated, "If there's a leak in -- in B Pod that Duro-Last [the roofing manufacturer] did, then that would be a leak that occurred -- did not occur as a result of a wind-driven opening." And when asked about specific buildings and damages to them, particularly damages reflected in the award to buildings that had been demolished prior to the appraisal process, Boone repeatedly responded, "You'll have to ask the appraisal panel what's included in their award."

[12] TWIA argued as much in its summary judgment response:

[Umpire] Burgess attributed known construction defects as wind damage, such as with Item #23 – KE Little ES Main Building. For Item 38 – San Leon – Burgess attributed a repair performed under warranty as covered damage under the policy. A new roof was also allowed for Item 49 – McAdams Jr. High-Auditorium, even though the building no longer existed. Astonishingly, Burgess allowed a $1,130,631.22 award for all observable damage to Item 90 – Gillis Admin Building, despite its condition of being abandoned, locked up, boarded, and exposed to unconditioned, moist air.

[13] When, as here, different causes are alleged for a single loss, causation is a liability question for the court. *Johnson*, 290 S.W.3d at 892.

22

conclusively prove causation and damages. Standing alone, the Appraisal Award simply does not provide sufficient evidence from which a court may determine as a matter of law which Appraisal Award damages, if any, were caused by a covered peril.[14] Thus, considering the evidence in the light most favorable to TWIA and

---

[14] Examining the Appraisal Award in this case reveals the problems with determining causation based on the Award alone. For example, the first building in the list, Bay Colony Elementary, is itemized as follows:

| Item # | Description | RCV | Depreciation | ACV |
|---|---|---|---|---|
| 1 | **Bay Colony Elementary** | | | |
| | Temp Roof Repairs | $4,857.00 | $199.14 | $4,657.86 |
| | Roof Wing A | $34,912.86 | $1,191.64 | $33,721.22 |
| | Roof Wing B | $27,365.07 | $964.11 | $26,400.96 |
| | Roof Wing C | $29,381.79 | $1,044.10 | $28,337.69 |
| | Roof Wing D | $28,445.91 | $991.33 | $27,454.58 |
| | Center roof | $23,612.00 | $822.51 | $22,789.49 |
| | Metal Awning | $10,885.59 | $558.02 | $10,327.57 |
| | Roof General | $11,247.60 | | $11,247.60 |
| | A115 | $2,019.40 | $72.18 | $1,947.22 |
| | A120 | $1,073.10 | $23.82 | $1,049.28 |
| | A123 | $1,373.48 | $28.99 | $1,344.49 |
| | A135 | $864.11 | $19.16 | $844.95 |
| | C101 | $862.27 | $28.56 | $833.71 |
| | C102 | $1,123.56 | $34.33 | $1,089.23 |
| | C109 | $1,537.16 | $57.99 | $1,479.17 |
| | D Hallway | $4,923.96 | $124.76 | $4,799.20 |
| | D101 | $1,076.60 | $20.81 | $1,055.79 |
| | D134 | $1,148.54 | $27.87 | $1,120.67 |
| | D138-Cafeteria | $28,851.85 | $596.92 | $28,254.93 |
| | E103 | $1,302.38 | $25.77 | $1,276.61 |
| | E105 | $1,339.04 | $33.83 | $1,305.21 |
| | Library | $4,422.13 | $90.22 | $4,331.91 |

23

resolving any doubts in TWIA's favor as the non-movant, *see W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005), we conclude that the trial court erred by granting partial summary judgment to DISD on causation and damages. *See Waloon*, 384 S.W.3d at 905; *cf. Paulson*, 393 S.W.2d at 319; *Kelly*, 2007 WL 527911, at *7; *cf. Farmers Grp.*, 434 S.W.3d at 325, 329-31.

DISD bore the burden of establishing that the damages it sought to recover were caused by Hurricane Ike wind or hail. DISD did not meet this burden by either

| | | | |
|---|---|---|---|
| E110 | $603.15 | $15.39 | $587.76 |
| E111 | $1,068.28 | $29.92 | $1,038.36 |
| West Elevation | $842.16 | $59.34 | $782.82 |
| South Elevation | $602.21 | $42.71 | $559.50 |
| East Elevation | $473.72 | $33.38 | $440.34 |
| North Elevation | $486.42 | $34.27 | $452.15 |
| Portable Bldg 103/104 roof | $5,191.72 | $192.34 | $4,999.38 |
| Portable Bldg 105/106 roof | $5,139.30 | $190.99 | $4,948.31 |
| Portable Bldg 107/108 roof | $5,098.54 | $189.65 | $4,908.89 |
| Contents, Pack-Out & Storage | $13,947.25 | $74.51 | $13,872.74 |
| General Conditions | $12,943.63 | $4,247.86 | $8,695.77 |
| | | | |
| Subtotal | $269,021.78 | $12,066.42 | $256,955.36 |
| Overhead | $26,902.18 | | |
| Profit | $29,592.40 | | |
| Sales Tax | $26,855.10 | | |
| Total | $352,371.45 | $12,066.42 | $340,305.03 |

Numerous interior rooms in this elementary school are listed as having sustained damage. But there is nothing to indicate what type of damage the dollar amounts represent. For example, nothing indicates whether the dollar amounts reflect damage from wind as opposed to flood, rain, or mold, all of which are excluded under the policy (subject to certain exceptions). The rest of the Appraisal Award similarly lacks important details about the type of damage found in DISD's buildings.

of its motions for partial summary judgment. Also, DISD did not meet this burden at trial—DISD was not tasked with it—because the trial court ruled that the partial summary judgment orders on causation and damages conclusively established the issue.

For these reasons, we sustain, in part, TWIA's first issue to the extent that TWIA seeks a reversal of the summary judgment orders.

## D. Remand is the appropriate remedy.

Having sustained TWIA's first issue in part, we must consider the appropriate remedy. TWIA seeks a rendition of a take nothing judgment or, alternatively, a remand. In support of its request for rendition, TWIA argues that DISD did not satisfy its burden at trial to segregate covered from non-covered losses and, in all events, DISD could not have met its burden regardless of the partial summary judgment rulings because it lacked a causation expert. Specifically, TWIA contends that DISD not only failed to offer expert testimony on causation but the trial court would have been required to exclude any causation expert witness by DISD because DISD did not properly designate a causation expert witness.

For several reasons, however, we conclude that a remand for new trial, not rendition of judgment, is the appropriate remedy. First, the evidence developed at trial was dependent on the court's partial summary judgment orders, which this court now has reversed. The trial court's interpretation of the summary judgment orders essentially relieved DISD from any burden to present trial evidence on the causation issue, so the trial court never reached the issue of whether DISD would be permitted to present expert witness testimony on that issue. Had the trial court denied summary judgment, the evidence presented well may have been different and potentially would have addressed all elements of DISD's claim and TWIA's defenses. TWIA says that DISD could not present the required expert testimony due to the lack of a

25

proper designation or other procedural reasons. While we agree with TWIA that expert testimony is required under the unique facts of this case,[15] we decline to rule on whether the trial court should have admitted DISD's expert testimony had it been offered because the matter was never reached. *See City of Angleton v. USFilter Operating Servs., Inc.*, 201 S.W.3d 677, 679 (Tex. 2006) (declining to review issue that was not first presented to trial court). As the entire trial proceedings were premised on erroneous summary judgment orders, the more prudent course of action is to restore the parties to the status quo at the time of the summary judgment rulings and begin anew. *See Associated Air Ctr. v. Tary Network Ltd.*, No. 06-13-00685-CV, 2015 WL 970664, at *7 (Tex. App.—Dallas Mar. 4, 2015, no pet.) (mem. op.) ("As long as there is a probability a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision."); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (remanding case for new trial, despite legal sufficiency

---

[15] Whether expert testimony is required on a particular subject is a question of law. *FFE Transp. Servs., Inc. v. Flugham*, 154 S.W.3d 84, 89 (Tex. 2004). Expert testimony is required when an issue involves matters that are beyond a factfinder's common understanding. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006). In determining whether expert testimony is required, we consider whether the matter at issue involves the use of specialized equipment or techniques unfamiliar to the ordinary person. *See FFE Transp. Servs.*, 154 S.W.3d at 91. In the present case, the appraisal inspections took place in October 2013, over five years after Hurricane Ike made landfall. Clearly, the appraised buildings were in a different condition in the days following the hurricane than they were in October 2013, when the appraisal inspections occurred, or in March 2015, when Umpire Burgess inspected the properties. Indisputably, DISD's insured structures were subject to additional wear and tear, deterioration, ordinary repairs (whether due to Ike's winds or other factors), maintenance, intervening weather events, and other subsequent events during those five to seven years. Parsing out the damages caused by Hurricane Ike's winds from those due to a myriad of other factors involves techniques unfamiliar to the ordinary person. *See*, *e.g.*, *id.* Thus, we agree with TWIA that, to prove causation under the facts of this case, DISD was required to present expert testimony.

TWIA contends that DISD lacks a causation expert because DISD effectively withdrew Mark Domangue as an expert. However, according to our record, DISD also designated expert Michael D. Stall, MSCE, PE, to "testify as to the cause and extent of the damages to [DISD]'s properties caused by Hurricane Ike" or "which of [DISD]'s damages were caused by windstorm."

26

issues, when sanctions ordered by trial court prevented full development of case); *Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 328 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Turboff v. Gerner, Aron & Ledet Invs.*, 763 S.W.2d 827, 832 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (reversing and remanding for new trial because erroneous pretrial summary judgment "limited to an indeterminate degree the evidence which was allowed before the jury"; declining to consider appellants' issues attacking sufficiency of evidence because of limitations on evidence due to erroneous ruling); *see also Gen. Star Indem. Co. v. Spring Creek Village Apts. Phase V, Inc.*, 152 S.W.3d 733, 738 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (reversing final judgment following jury trial based on erroneous pretrial partial summary judgment ruling on binding nature of appraisal award). On remand, DISD will have a full and fair opportunity to prove its claim, and TWIA will have a full and fair opportunity to prove its defenses. We think this result best comports with the interest of justice. *See* Tex. R. App. P. 43.3(b).

Moreover, the current record does not otherwise establish that TWIA is entitled to judgment as a matter of law on its affirmative defenses or on DISD's claim. The court precluded TWIA from presenting evidence of its affirmative defenses at trial. Because this court has reversed the summary judgment orders, TWIA's defenses remain for determination. Though TWIA made an offer of proof, that evidence was not admitted and DISD has not had a full opportunity to present controverting evidence or cross-examine TWIA's witnesses as to TWIA's defenses.[16]

---

[16] In this appeal, we do not address the merits or applicability of TWIA's defenses.

## E. It is unnecessary to reach TWIA's remaining issues.

Our resolution of TWIA's first issue either moots TWIA's remaining issues or renders them unnecessary to final disposition. *See* Tex. R. App. P. 47.1. In its second issue TWIA complains of the trial court's exclusion of evidence on TWIA's affirmative defenses. Our reversal of the partial summary judgment orders removes the basis for the trial court's evidentiary ruling. Because we are remanding for new trial, TWIA's defenses remain open for determination, as we have stated.

In its third issue TWIA asserts that the trial court erred in submitting question number one because in it the trial court failed to properly instruct the jury on the law, and the court should have submitted the question and instruction proposed by TWIA, which mirrored the instructions approved in *League City v. Texas Windstorm Insurance Association*, No. 01-15-00117-CV, 2017 WL 405816, at *4-6 (Tex. App.—Houston [1st Dist.] Jan. 31, 2017, no pet.). Again, we need not address this issue because the trial court will have the opportunity on remand to determine the appropriate charge language in light of applicable law when the scope of evidence during the new trial pertains to the full range of disputed issues, including coverage, notice, and causation.

In its final issue TWIA challenges the legal and factual sufficiency of the evidence to support breach and damages. But TWIA's points are grounded on the state of the trial evidence that flowed from erroneous partial summary judgment orders. Though we agree with TWIA that DISD did not present evidence showing that the Appraisal Award falls within the policy terms and conditions and is otherwise covered under the insuring agreement, DISD was expressly relieved from that burden by the trial court's pretrial rulings based on the trial court's interpretation of the summary judgment orders. In a new trial, the nature and scope of the evidence will be different.

28

## Conclusion

In sum, we hold that the trial court erred in granting DISD's motions for partial summary judgment because DISD did not establish causation and damages as a matter of law based solely on the Appraisal Award. For the reasons expressed, we reverse the judgment and remand this cause for proceedings consistent with this opinion.


/s/    Kevin Jewell
             Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jewell (Frost, C.J., dissenting).