# Supreme Court of Texas

No. 20-0507

FieldTurf USA, Inc. and Altech, Inc.,
*Petitioners*,

v.

Pleasant Grove Independent School District,
*Respondent*

On Petition for Review from the
Court of Appeals for the Sixth District of Texas

**Argued November 30, 2021**

JUSTICE LEHRMANN delivered the opinion of the Court.

The primary issue in this case, involving a school district's breach-of-warranty claims against a general contractor and an artificial-field-turf manufacturer, is whether a trial court's on-the-record, oral ruling sustaining an objection to summary judgment evidence suffices to strike the evidence from the summary judgment record when the ruling is not reduced to a written order. We hold that it does. We further hold that the court of appeals both erroneously reversed the trial court's summary judgment in favor of the contractor and improperly remanded

the claims against the turf manufacturer for a new trial without addressing the merits of the issues on appeal that, if sustained, could result in rendition of judgment for the manufacturer. Accordingly, we reverse the court of appeals' judgment in part, reinstate the trial court's summary judgment in favor of the contractor, and remand to the court of appeals to consider issues it did not reach.

## I. Background

In 2008, Pleasant Grove Independent School District contracted with Altech, Inc. for the construction of a new high-school football stadium. The District independently obtained bids from several synthetic-field-turf manufacturers and, in accordance with its architect's recommendation, selected the Prestige XM-60 turf system—composed of a synthetic fiber known as Duraspine—manufactured by FieldTurf USA, Inc. According to the District, FieldTurf had represented that its product was more durable than its competitors' and that the field would last ten to twelve years. Altech subcontracted with Sports Constructors, Inc. to install the turf, and Sports Constructors purchased the turf from FieldTurf and installed it. The stadium was substantially completed on October 16, 2009, and the District paid Altech for all work performed and took possession of the field.

FieldTurf provided an eight-year manufacturer's limited warranty stating in pertinent part:

> FIELDTURF warrants that if Prestige XM-60 . . .
> synthetic turf proves to be defective in material or
> workmanship, resulting in a loss of pile height greater than
> 50%, during normal and ordinary use of the
> Product . . . within 8 years from the date of completion of
> installation, FIELDTURF will, at FIELDTURF'S option,

2

either repair or replace the affected area without charge, to the extent required to meet the warranty period (but no cash refunds will be made). . . . This warranty is limited to the remedies of repair or replacement, which shall constitute the exclusive remedies available under this warranty, and all other remedies or recourses which might otherwise be available are hereby waived by the Buyer.

FieldTurf expressly "disclaim[ed] all other warranties of any kind, expressed or implied, in fact or in law, including but not limited to, the implied warranties of merchantability or fitness for a particular purpose." (Emphasis removed).

For its part, Altech warranted in its general contract with the District that "the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents." One of those documents listed the specifications for the synthetic turf system, which included:

The synthetic turf system shall meet the following shock absorption criteria when combined with the shock absorbency pad beneath the system:

a. G-Max Rating Range (upon installation)  80-120
   ASTM F355

b. G-Max Rating Range (Ultimate)       100-140
   ASTM F355

c. Field surface shall maintain a G-Max rating within the limits of the Ultimate G-max range listed above throughout the life of the synthetic turf system warranty.[1]

---

[1] G-Max testing measures the shock-absorbing properties of playing surfaces. Standard F355, established by ASTM International, is a common

3

According to District personnel, they first noticed issues with field degradation in the spring of 2014. In July, the District notified FieldTurf of those issues, including problems with the field's seams and degradation of the gold fiber lettering in each end zone compared to the adjacent black fiber. FieldTurf representative Ross Whitting inspected the field in August and repaired a loose seam. During the inspection, Whitting reportedly told District representative Steven Shatto that FieldTurf had "multiple fields that are failing" and that it was replacing some but not others. FieldTurf representative Todd Bresee inspected the field on September 22 and prepared an internal evaluation report—which was not shared with the District—in which he concluded that the field was "showing signs of accelerated wear in . . . all fiber colors in the area of the field in-between the numbers," as well as "large amounts of broken fiber on the surface." He rated much of the green fiber (the majority of the fiber on the playing field) as being in poor or fair condition, the white fiber (the end-zone boundary lines and markings on the playing field) as being in poor or fair condition, the fiber at the center logo as being in poor or fair condition, and the black fiber (making up the inlaid soccer lines) as being in fair or good condition. According to Shatto, Bresee stated during the inspection that the field was in bad shape and that the District was "on the right track" by insisting the field be replaced.

The day after Bresee's site visit, Shatto emailed FieldTurf representative Julie Paquin, reiterating his concern that the field had

---

industry-standard test method for measuring impact attenuation. *See* https://www.astm.org/f0355-16e01.html.

significantly degraded and stating his hope "that FieldTurf will look at our field as a total failure and replace it under full warranty[.]" Paquin replied that FieldTurf would communicate a "plan of action" once the report was prepared and reviewed by the senior leadership team. Over the next few months, Shatto sent Paquin monthly emails requesting an update on field replacement.

On January 13, 2015, FieldTurf informed the District via email that, based on the evaluation, FieldTurf had found the field to be in "fair/good" condition. Specifically, FieldTurf concluded that the field was "showing some signs of fiber degradation" but was "not exhibiting any playability or hazardous concerns." FieldTurf proposed conducting a LayMor Scrape, which involved removing a thin top layer of infill[2] to expose more turf fiber, removing excess infill, and completing "any minor inlaid repairs needed." FieldTurf also proposed revisiting the field in the next nine to twelve months "to monitor if there are any deviations and to discuss the field options moving forward."

The next day, the District's superintendent sent FieldTurf a letter rejecting its proposed action as an inadequate solution to the ongoing degradation of the field. The letter included a demand that FieldTurf replace the field "with a new installed surface meeting specifications equal to or greater than the original specified products."[3] FieldTurf responded on February 12, reiterating its conclusion that the field was

---

[2] "Infill" is the black crumb-rubber and sand mixture that fills in the spaces between the fibers to provide stability.

[3] The District also requested replacement of an adjacent indoor practice field composed of the same turf system. That field is not at issue in this suit.

5

"not at the point of replacement" and that the observed fiber degradation was "predominately a problem of appearance." FieldTurf again recommended a LayMor Scrape as "the best action at this time."

The District hired a consultant, Roland Kunkel, to assess the field. Kunkel reviewed the District's documents and inspected the field in October 2015, concluding that, based on the field's condition, the only viable solution was to replace it. Ultimately, in May 2016, the District hired another field supplier to replace the field for $348,050.

Meanwhile, in September 2015, the District sued FieldTurf and Altech, bringing claims for breach of contract and breach of warranty against both defendants and a fraud claim against FieldTurf.[4] The District initially alleged that Altech breached its promise to provide turf materials that were free from defects, and the District subsequently amended its petition to further allege that the field had "exceeded acceptable shock absorption criteria as measured by G-Max testing." As to FieldTurf, the District asserted that FieldTurf had breached both its express warranty that the field would be free from defects in materials and workmanship for eight years and its implied warranty that the field was fit for its intended purpose. The District also complained that FieldTurf failed to replace the field as the warranty required despite several requests that it do so. On the fraud claim, the District alleged that: it relied on FieldTurf's representations regarding the properties, qualities, and performance characteristics of the Duraspine fiber in selecting the Prestige XM-60 turf system; FieldTurf knew or should have

---

[4] The District also sued Sports Constructors but later nonsuited the claims against it.

6

known that the representations were false and that the materials were defective and would prematurely wear down; and FieldTurf continued to knowingly misrepresent that the product was defect-free in responding to the District's numerous requests that the field be replaced.

Altech filed a traditional and no-evidence motion for summary judgment, arguing that it played no role in selecting the allegedly defective turf product—the District chose the Prestige XM-60 and approved it as being compliant with the construction specifications— and that Altech made no guarantee or warranty that the product would be free from inherent defects or other defects permitted by the contract documents. The District responded that the contract did not exempt Altech from liability for inherent defects and that the contract expressly held Altech responsible for the acts of any downstream contractors. And the District argued that the field did not conform to the contract documents for the additional reason that it failed to maintain a G-Max rating less than 140 throughout its first eight years. In support of this assertion, the District attached to its summary judgment response a report from Bounce Diagnostics dated March 3, 2016 (the G-Max report), indicating an average field G-Max rating of 166.5 and individual results between 143.6 and 188.4, all exceeding the contractually mandated maximum of 140. The District also referenced Kunkel's expert report, in which he opined that the turf system failed to meet contract specifications, as evidenced in part by "the G-Max testing . . . performed on 3/03/2016 by Bounce Diagnostics."

In reply, Altech objected to the G-Max report on the grounds that (1) it failed to document that a proper testing device was utilized or that the device was calibrated and (2) the "authenticity of the G-Max report has not been established." Altech further noted that the District did not assert a claim premised on "a G-Max issue" until March 2017, well after the FieldTurf product was removed from the stadium, and that Altech had thus been denied the opportunity to conduct its own test. The District filed a surreply, arguing that the testing device had been correctly calibrated and that the G-Max report was properly authenticated.

At the hearing on Altech's summary judgment motion, the parties presented additional argument regarding the G-Max report's authenticity and resulting admissibility as summary judgment evidence. At the conclusion of the argument, the trial judge orally stated, "I'm . . . going to sustain [Altech's] objection and Altech's motion for summary judgment is granted." The trial court subsequently signed a written order granting the summary judgment motion and dismissing the District's claims against Altech with prejudice. The order did not reference the G-Max report, nor did the trial court sign any other written order sustaining Altech's objection to the report.

FieldTurf moved for partial summary judgment on all claims except the claim for breach of express warranty. FieldTurf contended the District's contract claim was meritless because no contract existed between those two parties. As to the implied-warranty claims, FieldTurf asserted that its express limited warranty disclaimed all other warranties. And FieldTurf argued the District's fraud claims failed for

8

a variety of reasons, including the independent-injury rule, the absence of any actionable misrepresentations, and the lack of a duty to disclose for purposes of any alleged fraudulent inducement by omission. After a hearing and supplemental briefing on the fraud claims, the trial court granted FieldTurf's motion and dismissed all claims against it except the claim for breach of express warranty, which was tried to a jury.

The jury returned a verdict in favor of the District and found that the District was entitled to $175,000 in damages—in the form of "[t]he difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted"—resulting from FieldTurf's failure to comply with the warranty. The trial court rendered judgment on the jury's verdict, awarding the District $175,000 in actual damages, plus pre- and post-judgment interest. FieldTurf moved for judgment notwithstanding the verdict, the District moved for a new trial, and the trial court denied both motions.

On appeal, the District argued that the trial court's order granting Altech summary judgment on the District's claim for breach of the G-Max warranty should be reversed because (1) Altech's motion was facially defective and (2) the evidence raised a fact issue as to whether Altech breached that warranty.[5] The District also sought reversal of the trial court's summary judgment for FieldTurf on the District's fraud claims and argued that the trial court improperly instructed the jury as

---

[5] The District did not complain about the trial court's summary judgment with respect to the breach-of-warranty claim premised on Altech's alleged failure to provide a defect-free field.

to the measure of damages on the warranty claim against FieldTurf. The District requested that the court of appeals remand for a new trial on the G-Max warranty claim against Altech and on the fraud and express-warranty claims against FieldTurf. FieldTurf cross-appealed, arguing that it was entitled to rendition of a take-nothing judgment because (1) the evidence conclusively showed the field did not qualify for warranty coverage; (2) the District's exclusive remedy under the warranty was repair or replacement; (3) the Uniform Commercial Code's exception allowing recovery of monetary damages despite a warranty's exclusive-remedy provision was neither pleaded nor proved; (4) as a matter of law, the District failed to provide FieldTurf the required opportunity to cure; and (5) the District presented no evidence of its damages under the measure authorized by the UCC and submitted to the jury.

The court of appeals reversed the summary judgment for Altech as to the G-Max warranty claim, holding that Altech's motion was not facially defective but that the G-Max report raises a fact issue on that claim. 634 S.W.3d 84, 92–95 (Tex. App.—Texarkana 2020). The court of appeals acknowledged that the trial court had sustained Altech's objection to the report on the record but held that "unless the trial court's order is reduced to writing, signed by the trial court, and entered of record," "the objected-to evidence remains a part of the summary-judgment proof." *Id.* at 94–95. As to FieldTurf, the court of appeals affirmed the trial court's partial summary judgment on the District's fraud claims. *Id.* at 99–100. The court did not address any of FieldTurf's arguments that it was entitled to rendition of judgment on the express-

10

warranty claim or the District's assertions of charge error with respect to the damages instruction. Instead, the court summarily concluded that "a remand for new trial [in the interest of justice] is the appropriate remedy, because the trial court's erroneous [summary judgment] regarding Altech limited to some degree the evidence of fault presented to the jury, and therefore the more prudent course of action is to restore the parties to the status quo at the time of the summary-judgment rulings and redo matters from that point forward." *Id.* at 101 (citing TEX. R. APP. P. 43.3(b)).

Altech and FieldTurf petitioned this Court for review. Altech seeks reinstatement of the summary judgment in its favor, while FieldTurf argues that the court of appeals' remand without first addressing FieldTurf's rendition issues was improper regardless of whether the summary judgment for Altech was correctly reversed.[6] The District did not file a cross-petition; accordingly, the portion of the court of appeals' judgment affirming summary judgment for FieldTurf on the District's fraud claims is final, and we do not consider it. TEX. R. APP. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review.").

---

[6] FieldTurf also joins Altech in arguing that the court of appeals erroneously reversed summary judgment for Altech, providing an additional reason the court should have addressed FieldTurf's issues on appeal before remanding for a new trial.

11

## II. Analysis

### A. Remand for New Trial as to FieldTurf

As a general matter, we have consistently held that when multiple grounds for reversal of a trial court's judgment are presented, courts of appeals should "first address issues that would require rendition" and thus should consider those issues before ordering a remand. *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201–02 (Tex. 2003) (citations omitted). However, even when rendition would otherwise be warranted, our rules of appellate procedure allow discretion for a remand when "the interests of justice require" it. TEX. R. APP. P. 43.3(b). We have said that the "most compelling case" for such a remand "is where we overrule existing precedents on which the losing party relied at trial." *Carowest Land, Ltd. v. City of New Braunfels*, 615 S.W.3d 156, 158–59 (Tex. 2020) (citation omitted); *see also Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 13, 26 (Tex. 1994) (remanding where the Court's opinion provided a "substantial clarification" of the law).

Another circumstance meriting a remand in the interest of justice, and the one relied on by the court of appeals here, is when the trial court's error prevented full development and presentation of the evidence. *Mobil Oil Corp. v. Frederick*, 621 S.W.2d 595, 596 (Tex. 1981); *see also Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 280 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("As the entire trial proceedings were premised on erroneous summary judgment orders, the more prudent course of action is to restore the parties to the status quo at the time of the summary judgment rulings and begin anew."). But a remand for that reason must be supported by

12

the record, *Jackson v. Ewton*, 411 S.W.2d 715, 718–19 (Tex. 1967), and we find no such support in this record. The court of appeals provided no explanation, and we discern none, for its conclusion that the trial court's grant of summary judgment for Altech, even if erroneous, affected development or presentation of the evidence at trial on the District's remaining claim against FieldTurf.

The District does not defend the court of appeals' reasoning, arguing only that the trial court's error in instructing the jury on the measure of damages required a remand irrespective of the merits of FieldTurf's appellate issues. But the court of appeals addressed neither party's issues on appeal, and we express no opinion on their viability. We agree with FieldTurf that the case must be remanded to the court of appeals to address the merits of the parties' appellate issues in the first instance.

### B. Summary Judgment for Altech

In partially reversing the trial court's summary judgment for Altech, the court of appeals held that the G-Max report created a fact issue as to whether Altech breached its warranty that the field would not exceed a G-Max rating of 140 throughout its first eight years. 634 S.W.3d at 94–95. As noted, the court of appeals held that the G-Max report remained in the summary judgment record, despite the trial court's express oral ruling sustaining Altech's written objection to the report, because that ruling was never reduced to writing. *Id.* Altech argues that the court of appeals erred in requiring a written order and discounting the trial court's on-the-record oral ruling, while the District maintains that allowing any consideration of the reporter's record on

13

summary judgment review would amount to "a major revision to summary judgment and appellate procedure." For the reasons discussed below, we agree with Altech and hold that the court of appeals erred in considering and relying on the G-Max report to reverse the trial court's summary judgment.[7]

It is well settled that while "[t]he same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings," "the rules of error preservation also apply." *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163–64 (Tex. 2018). Thus, to complain on appeal about defects in the form of summary judgment evidence, a party must both timely object and secure a ruling from the trial court on the objection. *Id.* at 164; *see* TEX. R. CIV. P. 166a(f) (stating that a defect in the form of summary judgment evidence provides no "grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend"). Without both an objection and a ruling, the complained-of evidence remains part of the summary judgment record and should be considered by the court of appeals in reviewing the trial court's judgment. *Seim*, 551 S.W.3d at 166; TEX. R. APP. P. 33.1(a) (stating that preservation of a complaint for appellate review requires that the record show both (1) the complaint

---

[7] Altech and FieldTurf argue that the District waived the argument that a written order on Altech's objection to the G-Max report was required by failing to raise it until the reply brief in the court of appeals. The District responds that it had no reason to raise the issue until Altech and FieldTurf argued in their appellees' briefs that the report could not be considered despite the absence of a written order to that effect. Because we disagree with the District that a written order was required, we need not address whether the issue was waived.

14

was made to the trial court by a timely request, objection, or motion and (2) the court expressly or implicitly ruled, or refused to rule, on the request or objection).

In *Seim*, we explained that before Rule 33.1 was amended in 1997 to allow for an "implicit" ruling, "it was 'well settled' that trial courts must expressly rule on objections in writing for error to be preserved." 551 S.W.3d at 165 (citation omitted). The amendment led to a conflict among the courts of appeals regarding whether a trial court may "implicitly" rule on an objection to summary judgment evidence merely by granting the summary judgment motion. *Id.* at 164. Confirming that a ruling may be implied only if "the implication was 'clear,'" we held in *Seim* that an order granting a party's motion for summary judgment does not in itself clearly imply a ruling sustaining the party's objections to summary judgment evidence, at least where "sustaining the objections was not necessary for the trial court to grant summary judgment." *Id.* at 166 (citing *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003)).

The District argues that while *Seim* "opened up the possibility that a *written order* could *implicitly* constitute [a ruling sustaining an objection to evidence] where the only way the ruling could have been reached is by necessarily sustaining [the] objection," it did not "suggest that summary judgment review was now opened up to include rulings on reporter's transcripts." Of course, *Seim* addressed only the issue presented in that case, but we were careful to note in presenting the facts that the trial court had "neither signed the [proposed] order sustaining [the party's] objections *nor otherwise ruled on them.*" *Id.* at

163 (emphasis added). And our conclusion that the objected-to evidence remained in the record was premised on the observation that "nothing *in this record* serves as a clearly implied ruling by the trial court on [the] objections." *Id.* at 166 (emphasis added). By contrast, a trial court's on-the-record, unequivocal oral ruling on an objection to specific evidence could hardly be more "clear."

Several courts of appeals have held as much, concluding that where the record shows the trial court heard argument and documented its express rulings on the pertinent objections in the reporter's record, the rulings need not be reduced to writing to satisfy Rule 33.1. *E.g.*, *Birnbaum v. Atwell*, No. 01-14-00556-CV, 2015 WL 4967057, at *4 (Tex. App.—Houston [1st Dist.] Aug. 20, 2015, pet. denied); *Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 395–96 (Tex. App.—Corpus Christi 2000, no pet.) (holding that the absence of a written order overruling objections to summary judgment evidence was unnecessary to preserve error where the reporter's record of the summary judgment hearing revealed that the trial court explicitly overruled the objections).[8]

---

[8] *See also Ordonez v. Solorio*, 480 S.W.3d 56, 63 (Tex. App.—El Paso 2015, no pet.) ("Failure to obtain written rulings on objections to summary judgment evidence waives the issue, unless . . . something in the record reflect[s] that the trial court ruled on the objections."); *Kothmann v. Cook*, No. 07-05-00335-CV, 2007 WL 1075171, at *3 (Tex. App.—Amarillo Apr. 11, 2007, no pet.) (holding that where a hearing has been held on the motion, and the trial court has clearly and unequivocally sustained the objection, the objected-to evidence does not form part of the summary judgment evidence); *Rogers v. Cont'l Airlines, Inc.*, 41 S.W.3d 196, 200 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("A party objecting to the competency of summary judgment proof must obtain a ruling on its objection *or* obtain a written order signed by the trial judge and entered of record, or the objection is waived and the proof remains a part of the summary judgment record." (emphasis added)).

We agree with the reasoning of these decisions. A trial court's on-the-record, unequivocal oral ruling on an objection to summary judgment evidence qualifies as a ruling under Texas Rule of Appellate Procedure 33.1, regardless of whether it is reduced to writing.

We do not view this holding as a significant shift regarding consideration of a reporter's record in reviewing a summary judgment on appeal. Under our procedural rules, oral testimony may not be received at the summary judgment hearing. TEX. R. CIV. P. 166a(c). A motion for summary judgment must be in writing, and "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." *Id.*; *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (holding that under Rule 166a(c), "both the reasons for the summary judgment and the objections to it must be in writing and before the trial judge at the hearing"). Because issues, grounds, and testimony in support of and in opposition to summary judgment may not be presented orally, a reporter's record of such a hearing is generally unnecessary for appellate purposes. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 n.7 (Tex. 1993); *see also Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 291 n.141 (Tex. 2004) (holding that the trial court did not err in denying a party's request for a court reporter to transcribe the summary judgment hearing).[9]

---

[9] By the same token, appellate courts do not consult the reporter's record of a summary judgment hearing to determine the trial court's grounds, if any, for its ruling on a summary judgment motion. *See Gonzales v. Thorndale Coop. Gin & Grain Co.*, 578 S.W.3d 655, 657–58 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Our holding today does not alter that general principle. As a practical matter, sometimes summary judgment hearings are transcribed, and sometimes they are not; the best practice for a party objecting to summary judgment evidence is to secure a written order on the objection from the trial court. But if no such order is issued, and the reporter's record of the hearing reveals an unequivocal oral ruling on the objection, that ruling is sufficient for error-preservation purposes.

Here, Altech objected in writing to the G-Max report on authenticity and other grounds, and the District was given an opportunity to supplement the report before the summary judgment hearing. As noted, the parties presented additional argument on the objection at the hearing. The trial court then stated, "I'm . . . going to sustain your objection and Altech's motion for summary judgment is granted." No further written order was required, and, contrary to the court of appeals' conclusion, the G-Max report did not "remain[] a part of the summary-judgment proof." 634 S.W.3d at 94–95.[10] Accordingly, the court of appeals erred in relying on the report to conclude that a

---

[10] Altech alternatively argues that because the report is "wholly unauthenticated," it cannot serve as summary judgment evidence regardless of whether Altech preserved error under Rule 33.1. We need not reach this argument, but we note that the District responds by arguing, in part, that "the report was not unauthenticated." To the extent the District now argues that the trial court erred in sustaining Altech's objection to the report, the District made no such argument in the court of appeals—in either its opening brief or its reply brief. Instead, it argued only that the G-Max report remained a part of the summary judgment record due to the absence of a written order. We will not consider whether Altech's objection to the report was improperly sustained when the court of appeals was given no opportunity to do so. *See In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005).

18

genuine issue of material fact existed as to whether the turf's G-Max ratings exceeded those required by Altech's warranty.

The District alternatively argues that even if the G-Max report is not considered, the court of appeals' judgment may nevertheless be affirmed because the report was cumulative of other evidence attached to Altech's own summary judgment motion that created a fact issue on the G-Max warranty claim. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex. 2003) (to be entitled to summary judgment under Rule 166a(c), the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law). Specifically, the District argues that the same fact reflected in the G-Max report—that the field exceeded permissible shock-absorption levels—was also reflected in Kunkel's expert report, which was attached as an exhibit to Altech's motion. We disagree.

Kunkel opined in his report that G-Max testing of the District's field "indicat[ed] values exceeding the permissible levels as set forth in the relevant standards and guidelines, such as ASTM, STC, FIFA, EN etc." The contract between Altech and the District required that the turf fall within a specific G-Max rating range over the life of the warranty (between 100 and 140), as measured in accordance with ASTM Standard F355. Kunkel's report generally references ASTM standards, but not a particular standard, and is silent about the numerical result of any G-Max testing. Although in reviewing a summary judgment we take as true all evidence favorable to the nonmovant and indulge reasonable inferences in the nonmovant's favor, *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005), the inference the District would have

19

us draw is not a reasonable one. Reading Kunkel's report to indicate that the field's G-Max rating exceeded 140 as measured in accordance with ASTM Standard F355 would be impermissible speculation. Accordingly, we hold that Kunkel's report does not create a fact issue as to the District's G-Max warranty claim and does not provide an independent basis on which to affirm the court of appeals' judgment.

### III. Conclusion

The court of appeals erred in partially reversing the trial court's summary judgment for Altech and in remanding the breach-of-warranty claims against FieldTurf for a new trial without addressing the merits of FieldTurf's and the District's issues on appeal. Accordingly, we reverse those portions of the court of appeals' judgment, reinstate the trial court's summary judgment for Altech, and remand the case to the court of appeals to consider unaddressed issues.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** March 4, 2022

20